# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| VICTORIA SOBOLESKI, on behalf of herself and others similarly situated,<br><br>        **Plaintiff,**<br><br>  v.<br><br>MICHAEL KORS (USA), INC.,<br><br>        **Defendant.** | Case No. 2:25-cv-11838-DPH-CI<br>District Judge Denise Page Hood<br>Magistrate Judge Curtis Ivy, Jr.<br><br>**DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Oral Argument Requested<br><br>Electronically Submitted |

## DEFENDANT MICHAEL KORS (USA), INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Defendant Michael Kors (USA), Inc. ("Defendant" or "MK") hereby moves to dismiss the putative Class Action Complaint (ECF No. 1, the "Complaint" or "Compl.") filed by Plaintiff Victoria Soboleski ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). The bases and authority for this Motion to Dismiss (the "Motion") are fully set forth in the attached brief in support, which is attached and incorporated herein.

Pursuant to Local Rule 7.1(a) and this Court's Practice Guidelines, the undersigned certifies that counsel for MK conferred with counsel for Plaintiff on November 5, 2025, regarding the basis of this Motion and whether Plaintiff would

concur in the relief it seeks prior to filing.  Plaintiff's Counsel confirmed that he does not concur and opposes the Motion in its entirety.

WHEREFORE, MK respectfully requests that the Court enter an Order granting the Motion and dismissing Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the merits and with prejudice. MK further requests that this Honorable Court grant any other relief in its favor that the Court deems just and appropriate.

Dated: November 6, 2025                    Respectfully submitted,

By: */s/ James B. Saylor*
       James B. Saylor
       Kelley Drye & Warren LLP
       3 World Trade Center
       175 Greenwich Street
       New York, NY 10007
       Tel.: (212) 808-7800
       jsaylor@kelleydrye.com

       Benjamin J. Aloia
       Ralph Colasuonno
       Aloia Law, P.C.
       48 S. Mai Street, Ste. 3
       Mount Clemens, MI 48043
       Tel.: (586) 783-3300
       aloia@aloia.law
       colasuonno@aloia.law

       *Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| VICTORIA SOBOLESKI, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL KORS (USA), INC.,<br><br>Defendant. | Case No. 2:25-cv-11838-DPH-CI<br>District Judge Denise Page Hood<br>Magistrate Judge Curtis Ivy, Jr.<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Oral Argument Requested<br><br>Electronically Submitted |

## DEFENDANT MICHAEL KORS (USA), INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

# <u>TABLE OF CONTENTS</u>

Page

INDEX OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ....... ii

INDEX OF EXHIBITS ........................................................................................v

ISSUES PRESENTED ...................................................................................... vi

INTRODUCTION ...............................................................................................1

BACKGROUND ..................................................................................................2

LEGAL STANDARD..........................................................................................3

ARGUMENT .......................................................................................................4

I.      Plaintiff's Claim Is Not Covered by the TCPA..........................................4

        A.      Plaintiff Is Not a "Residential Telephone" Subscriber ........................5

        B.      Plaintiff Did Not Receive Any "Telephone Calls" Under the
                TCPA ......................................................................................................11

II.     Plaintiff's Conclusory Allegations Fail to State a Claim ............................16

CONCLUSION ....................................................................................................17

## <u>INDEX OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

**Page(s)**

**Cases**

*Arctic Exp., Inc. v. Del Monte Fresh Produce NA, Inc.*,
    366 B.R. 786 (S.D. Ohio 2007) ........................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................3

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
    591 U.S. 610 (2020) ..........................................................................................8

*Cunningham v. Enagic USA, Inc.*,
    No. 3:15-cv-00847, 2017 WL 2719992 (M.D. Tenn. June 23, 2017) .................9

*Cunningham v. Rapid Cap. Funding, LLC/RCF*,
    No. 3:16-cv-02629, 2017 WL 3574451 (M.D. Tenn. July 27, 2017) ..........16, 17

*Cunningham v. Spectrum Tax Relief LLC*,
    No. 3:16-cv-02283, 2017 WL 3222559 (M.D. Tenn. July 7, 2017) ...............5, 9

*Cunningham v. Sunshine Consulting Grp., LLC*,
    No. 3:16-cv-02921, 2018 WL 3496538 (M.D. Tenn. July 20, 2018) ..............6, 9

*Davis v. CVS Pharmacy, Inc.*,
    No. 4:24-cv-00477, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025) .......11, 13, 14

*Dolan v. U.S. Postal Serv.*,
    546 U.S. 481 (2006) ........................................................................................10

*England v. DENSO Int'l Am. Inc.*,
    136 F.4th 632 (6th Cir. 2025) ...........................................................................4

*Gaker v. Q3M Ins. Sols.*,
    No. 3:22-cv-00296, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) ...............7, 8, 9

*Gilliam v. Reliance First Cap., LLC*,
    No. 2:21-cv-04774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ....................17

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    377 F.3d 592 (6th Cir. 2004), *aff'd*, 545 U.S. 308 (2005) ................................10

*Hamdan v. Rumsfeld*,
    548 U.S. 557 (2006) ............................................................................................ 7

*Hicks v. Alarm.com, Inc.*,
    No. 1:20-cv-00532, 2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ..................... 17

*Hollis v. Erdos*,
    480 F. Supp. 3d 823 (S.D. Ohio 2020) ............................................................. 12

*Int'l IP Holdings, LLC v. Vitamin Energy, Inc.*,
    No. 2:19-cv-11716, 2023 WL 6466560 (E.D. Mich. Oct. 4, 2023) ..................... 4

*Johnson v. Palmer Admin. Servs., Inc.*,
    No. 6:22-cv-00121, 2022 WL 17546957 (E.D. Tex. Oct. 20, 2022) ................... 9

*Jones v. Blackstone Med. Servs., LLC*,
    No. 1:24-cv-01074, 2025 WL 2042764 (C.D. Ill. July 21, 2025) .......... 11, 12, 15

*Keating v. Peterson's Nelnet, LLC*,
    615 F. App'x 365 (6th Cir. 2015) ..................................................................... 12

*Keen v. Helson*,
    930 F.3d 799 (6th Cir. 2019) .............................................................................. 6

*La Boom Disco, Inc. v. Duran*,
    141 S. Ct. 2509 (2021) ...................................................................................... 15

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ............................................................................................ 6

*McLaughlin Chiropractic Assocs. v. McKesson*,
    606 U.S. 146 (2025) .......................................................................................... 12

*Moore v. Triumph CSR Acquisition, LLC*,
    No. 1:23-cv-04659, 2023 WL 8601528 (N.D. Ill. Dec. 12, 2023) ......... 5, 8, 9, 10

*Morgan v. U.S. Xpress, Inc.*,
    No. 3:17-cv-00085, 2018 WL 3580775 (W.D. Va. July 25, 2018) .............. 10, 17

*Norfolk S. Ry. Co. v. Perez*,
    778 F.3d 507 (6th Cir. 2015) ............................................................................ 11

*Priorities USA v. Nessel*,
    628 F. Supp. 3d 716 (E.D. Mich. 2022) ............................................................6

*Regal Stone Ltd. v. Longs Drug Stores Cal., LLC*,
    881 F. Supp. 2d 1123 (N.D. Cal. 2012)............................................................14

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ............................................................................15

*Sayed v. Naturopathica Holistic Health, Inc.*,
    No. 8:25-cv-00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ..................13

*Shelton v. Fast Advance Funding, LLC*,
    378 F. Supp. 3d 356 (E.D. Pa. 2019)..................................................................7

*Sw. Airlines Co. v. Saxon*,
    596 U.S. 450 (2022)..........................................................................................14

*United States v. Bricker*,
    135 F.4th 427 (6th Cir. 2025) ...........................................................................12

## Statutes or Other Authorities

47 U.S.C. § 227 *et. seq.*...................................................................................*passim*

47 C.F.R. § 64.1200 *et. seq.*..................................................................................4, 7

137 Cong. Rec. 30824 (1991) ...................................................................................8

6 Cir. R. 32.1 ...........................................................................................................12

Fed. R. Civ. P. 12(b)(6)............................................................................................ 3

Pub. L. 102-243, 105 Stat. 2394-2402 (1991) .........................................................7

Pub. L. 115-141, 132 Stat 1091-94 (2018) ............................................................14

S. Rep. 102-178 (1991)..............................................................................................8

*Residential*, Webster's Third New Int'l Dictionary of the English
    Language Unabridged (1993) ..............................................................................6

## <u>INDEX OF EXHIBITS</u>

Exhibit A – Excerpt of Webster's Third New International Dictionary (1993)

Exhibit B – Pub. L. 102-243, 105 Stat. 2394-2402 (1991)

Exhibit C – Statement of Sen. Lloyd Bentsen, 137 Cong. Rec. 30824 (Nov. 7, 1991)

Exhibit D – Senate Report on Bill S. 1462, S. Rep. 102-178 (1991)

Exhibit E – Pub. L. 115-141, 132 Stat 1091-94 (2018)

## <u>ISSUES PRESENTED</u>

**Issue No. 1:**

Should the Court grant Defendant's Motion because Plaintiff is not a "residential telephone subscriber" under the TCPA?

Plaintiff says: No

Defendant says: YES

How this Court should Rule: Yes

**Issue No. 2:**

Should the Court grant Defendant's Motion because any SMS text messages allegedly sent to Plaintiff's cell phone are not "telephone calls" under the TCPA?

Plaintiff says: No

Defendant says: YES

How this Court should Rule: Yes

**Issue No. 3:**

Should the Court grant Defendant's Motion because Plaintiff has simply failed to state a claim under the TCPA?

Plaintiff says: No

Defendants say: YES

How this Court should Rule: Yes

Defendant Michael Kors (USA), Inc. ("Defendant" or "MK") respectfully states as follows for its Brief in Support of its Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 1, the "Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6):

## **INTRODUCTION**

This case is one of nine putative class actions brought by Plaintiff Victoria Soboleski ("Plaintiff"), a serial litigant, and her counsel under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").[1]  In each of her copy-and-paste complaints, Plaintiff alleges that she acquired a new cell phone that was enrolled in a company's promotional SMS messaging program and subsequently registered the phone number with the National Do-Not-Call Registry ("DNC Registry").  When the company continued to rely on the past consent and sent her SMS messages, Plaintiff never responded "STOP" or otherwise indicated that she did not wish to receive the promotional messages, as any reasonable person would do; instead, she pursued a campaign of nationwide class action lawsuits against companies including MK, Crumbl Cookies, and even a local pizzeria, all containing

---

[1]     *Soboleski v. King's Pizza IV Inc.,* No. 3:24-cv-13138 (E.D. Mich. filed Nov. 26, 2024); *Soboleski v. Luminess Direct LLC,* No. 2:24-cv-13397 (E.D. Mich. filed Dec. 18, 2024); *Soboleski v. Clutch, Inc.*, No. 2:25-cv-11698 (E.D. Mich. filed June 8, 2025); *Soboleski v. MCM Prods. USA Inc.*, No. 2:25-cv-11699 (E.D. Mich. filed June 8, 2025); *Soboleski v. Terrascend Corp.*, No. 2:25-cv-11763 (E.D. Mich. filed June 12, 2025); *Soboleski v. Crumble LLC*, No. 2:25-cv-11839 (E.D. Mich. filed June 19, 2025); *Soboleski v. Dispo Holdings LLC*, No. 2:25-cv-11856 (E.D. Mich. filed June 20, 2025); *Soboleski v. Extended Stay Am., Inc.*, No. 3:25-cv-00526 (W.D.N.C. filed July 18, 2025).

the same boilerplate allegations and flawed theories regarding cellular devices.  In each case, Plaintiff hopes to pursue class-wide statutory damages of $500–$1,500 per text under the TCPA.

Plaintiff's allegations in this Complaint focus on five text messages she received from MK. She asserts one cause of action under the TCPA, claiming that text messages from MK were sent to Plaintiff's number without her consent while her cell phone number was on the DNC Registry.  However, Plaintiff's Complaint fails as a matter of law because the statutory provision at issue neither applies to cell phone numbers nor to text messages.  Because Plaintiff cannot overcome the plain text, structure, and legislative history of the TCPA, she cannot allege facts sufficient to establish a plausible claim under the TCPA.  Her Complaint should be dismissed.

## <u>BACKGROUND</u>

Plaintiff alleges that in March 2025, she acquired the cell phone number (586) 420-XXXX (the "586 Number").  (Compl. ¶ 8.)  Plaintiff claims that she used the phone "as a personal residential telephone number" and not for "business or commercial purposes." (*Id.* ¶¶ 9, 11.)  Outside of alleging that she does not own a landline, however, Plaintiff pleads no further facts concerning her alleged use of the 586 Number.  (*Id.* ¶ 10.)  Nonetheless, Plaintiff alleges that after acquiring the 586 Number, she registered it to the DNC Registry on March 27, 2025.  (*Id.* ¶ 12.)

After registering the 586 Number to the DNC Registry, Plaintiff alleges that MK sent her several text messages offering her promotions on MK's website.  (*Id.* ¶¶ 13–14.)  Specifically, Plaintiff claims she received at least five text messages[2] from MK over two months, with messages on May 1, 3, 6, 10, and 14, 2025.  (*Id.* ¶ 14.)  Despite acknowledging that "[t]he subject text messages were intended for someone other than, and unknown to, Plaintiff,"  (*id.* ¶ 16), Plaintiff never replied "STOP" to any messages she received or otherwise made any attempt to stop the messages.  Nevertheless, Plaintiff claims that these texts caused her an "actual harm" in which "[s]he suffered an invasion of privacy, an intrusion into her life, and a private nuisance."  (*Id.* ¶ 20.)

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the pleadings include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* When determining whether a claim is plausible, "the Court should first identify any

---

[2]     Though Plaintiff's Complaint features ten (10) screenshots of text messages purportedly sent to the 586 Number from MK, several of the images are duplicates.

3

conclusory allegations and bare assertions that are not entitled to an assumption of truth, then consider the factual allegations that are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief." *Int'l IP Holdings, LLC v. Vitamin Energy, Inc.*, No. 2:19-cv-11716, 2023 WL 6466560, at *6 (E.D. Mich. Oct. 4, 2023) (Hood, J.) (citation omitted). But if the Plaintiff does not allege sufficient factual allegations to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *England v. DENSO Int'l Am. Inc.*, 136 F.4th 632, 636 (6th Cir. 2025) (quoting *Iqbal*, 550 U.S. at 570).

## ARGUMENT

### I.    Plaintiff's Claim Is Not Covered by the TCPA

Plaintiff cannot state a claim under the TCPA as a matter of law because the act does not cover her allegations.  Section 227(c) provides a private right of action for persons who have received "more than one **telephone call** within any 12-month period by or on behalf of the same entity in violation of the regulations" prescribed under Section 227(c) of the TCPA.  47 U.S.C. § 227(c)(5).  The corresponding federal regulation is 47 C.F.R. § 64.1200(c), which provides that "[n]o person or entity shall initiate any telephone solicitation to . . . **[a] residential telephone subscriber** who has registered his or her telephone number on the [DNC Registry]." 47 C.F.R. § 64.1200(c)(2) (emphasis added).

Plaintiff's claim, however, is premised entirely on text messages that MK allegedly sent to her cell phone, meaning her claim necessarily fails as a matter of law in both regards.  First, Section 227(c) is limited to "residential telephone subscribers," but Plaintiff's cell phone cannot be considered a residential phone under the plain text and structure of the TCPA.  Second, Section 227(c)'s private right of action is limited to consumers who received "telephone calls," and text messages are plainly not the same thing as telephone calls.  Congress was very particular with the language it chose in enacting the TCPA, and had it meant for the act to encompass claims such as those of Plaintiff, it could have done so.  Congress, however, chose not to.  Plaintiff's TCPA claim should be dismissed.

## A.     Plaintiff Is Not a "Residential Telephone" Subscriber

Plaintiff's TCPA claim necessarily fails as a matter of law because Section 227(c) is "limited to redress for violations of the regulations that concern residential telephone subscribers."  *Cunningham v. Spectrum Tax Relief LLC*, No. 3:16-cv-02283, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017).  Here, Plaintiff is not a "residential telephone" subscriber because the phone on which she uses the 586 Number is not a "residential telephone" at all; it is a cell phone.  As textual, structural, and common-sense readings of the TCPA confirm, "[a] cellular phone and a residential phone are not the same thing." *Moore v. Triumph CSR Acquisition, LLC*, No. 1:23-cv-04659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023).

5

*First*, the plain text of Section 227(c) does not apply to cell phones. "[T]he language of the TCPA specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.'" *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-cv-02921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018) (quoting 47 U.S.C. § 227(c)(1)), *report and recommendation adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018). When interpreting the meaning of a statute, the court should construe those terms "based on their ordinary meaning at the time of a statute's enactment." *Priorities USA v. Nessel*, 628 F. Supp. 3d 716, 734 (E.D. Mich. 2022) (citing *Wis. Cent. Ltd v. United States*, 585 U.S. 274, 277 (2018)). After all, "[t]hat is the whole point of having written statutes; every statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

To determine the meaning of the term residential telephone at the time Congress enacted the TCPA in 1991, "contemporaneous dictionaries are the best place to start." *Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019). And at the time, the term "residential" meant being "adapted or restricted to or occupied by residences" or "of, relating to, or connected with residence or residences." (Exhibit A, *Residential*, Webster's Third New Int'l Dictionary of the English Language Unabridged (1993).) This definition has no resemblance to modern cell phones, which "do not present the same concerns" as residential lines because the "mobility

6

and functionality to silence or decline calls alleviate the concerns inherent with a home telephone." *Gaker v. Q3M Ins. Sols.*, No. 3:22-cv-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023).[3]  Put differently, under the statute's plain text, a "residential telephone" is "a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere." *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) (quoting Merriam-Webster); *see also* Exhibit B, Pub. L. 102-243, 105 Stat. 2394-95 (1991), enacted as 47 U.S.C. § 227 (finding that the TPCA was intended to restrict calls made "to the home").

*Second*, the structure of the TCPA shows that the term "residential telephone" as used in Section 227(c) was not meant to encompass cell phones.  When interpretating a statute, courts may draw "a negative inference . . . from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006).  Here, "the TCPA specifically mentions 'cellular telephone service' in [47 U.S.C.] § 227(b) and [47 C.F.R.] § 64.1200(a)(1)(iii)" but did not use that term in Section 227(c), which instead only covers "residential telephone subscribers." *Shelton*, 378 F. Supp. 3d at 363 n.7.  Had Congress intended for "residential telephone" to also include cell phones, it would not have included cell telephones elsewhere in that same act. *See,*

---

[3]      Indeed, Plaintiff's own cell phone has the ability to silence calls, as each screenshot she attaches to her Complaint show the phone in "vibrate" mode with no sound on.  (Compl. ¶ 14.)

*e.g.*, *Moore*, 2023 WL 8601528, at *2 (finding that the use of "residential telephone line" and "cellular telephone service" in close proximity to one another "is a strong clue that the two terms do not mean the same thing."); *Gaker*, 2023 WL 2472649, at *3 ("The structure and language of the TCPA controvert coverage of cell phones.").

Indeed, the legislative history of the statute confirms that Congress acted deliberately when it enumerated cellular telephones in Section 227(b) but not Section 227(c).  When debating the TCPA, Congress acknowledged the unique considerations posed by cellular devices when enumerated "cellular" telephones in Section 227(b).  *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 648 (2020) (Gorsuch, J., concurring) (explaining that Congress banned robocalls to cell phones "to address the problem" caused by "many cell phone users ha[ving] to pay for each call").  Senator Lloyd Bentsen, a co-sponsor of the TCPA, explained the difference between "unsolicited automated calls to the home" and "automated calls to . . . cellular telephones" in Congressional hearings.  (Exhibit C, 137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen)).  And the Senate Report, summarizing the TCPA's major provisions, separately enumerated its intended effect on "[e]mergency and [c]ellular lines" and on "[c]omputerized calls to homes"—i.e., computerized calls to residential telephone subscribers.   (Exhibit D, S. Rep. 102-178, at 6 (1991)).  As enacted, therefore, cell phones are treated differently than residential telephones and are not included in Section 227(c); to the extent Plaintiff

believes differently, "the authority rests with Congress to amend the TCPA and bring cell phones within its protections." *Gaker*, 2023 WL 2472649, at *3.

With this legislative history in mind, courts throughout the country have found Congress's distinction between "residential" and cellular devices to be meaningful. In fact, the "majority of the persuasive precedent" under the TCPA found that the term "residential telephone" does not include cell phones. *Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-cv-00121, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022); *see also Moore,* 2023 WL 8601528, at *2 (collecting cases finding that "courts widely hold that a cell phone is not a 'residential telephone line'" under Section 227(b)). This is also true under Section 227(c), which courts in this Circuit regularly find excludes complaints where "Plaintiff alleges only calls to [her] cell phone." *Sunshine Consulting Grp.*, 2018 WL 3496538, at *6; s*ee also, e.g.*, *Spectrum Tax Relief LLC*, 2017 WL 3222559, at *3; *Cunningham v. Enagic USA, Inc.*, No. 3:15-cv-00847, 2017 WL 2719992, at *6 (M.D. Tenn. June 23, 2017).

*Third*, beyond the TCPA's plain text and structure, a commonsense interpretation of the law further establishes that Plaintiff's cell phone is not a residential device. As the Sixth Circuit has explained, "a basic rule of statutory construction mandates that a court should read statutes as a whole and not interpret one provision in a way that would render another meaningless or superfluous."

9

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 377 F.3d 592, 596–97 (6th Cir. 2004), *aff'd*, 545 U.S. 308, (2005).   Here, accepting Plaintiff's interpretation of the term "residential telephone" as being interchangeable with cell phones would nullify the TCPA's built-in distinctions between the two. *See Moore,* 2023 WL 8601528, at *3 ("The text of the statute reflects common parlance and natural usage. A cell phone is not a residential phone."); *Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) ("Congress used different language to discuss cell phones and residential lines, further demonstrating that they are not interchangeable.").   Where Congress repeatedly and deliberately created separate restrictions for calls made to residential and cellular telephones, interpreting the term "residential telephone" as used in Section 227(c) as also encompassing "cellular phones" would fundamentally rewrite the statute.

When interpreting the term residential telephone subscriber, its meaning "depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006).   Here, every mode of statutory construction reveals that "cellular" and "residential" are separate and distinct terms. By only enumerating "residential telephone subscribers" in Section 227(c), Congress only extended protections to those consumers.   Thus, because Plaintiff cannot plead that she is a residential telephone subscriber, she has no claim here.

### B.    Plaintiff Did Not Receive Any "Telephone Calls" Under the TCPA

Plaintiff's claims also fail as a matter of law because the TCPA only provides a right of action for residential subscribers who received "more than one telephone call."  47 U.S.C. § 227(c)(5).  Plaintiff did not receive any telephone *calls*, and "Section 227(c)(5) does not apply to text messages."  *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074, 2025 WL 2042764, at *3 (C.D. Ill. July 21, 2025). Thus, "because text messages are not telephone calls, [s]he has not stated a claim" under the TCPA.  *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-00477, 2025 WL 2491195, at *4 (N.D. Fla. Aug. 26, 2025).

The plain meaning of the term "telephone call" confirms that it was not intended to encompass text messages.  As discussed above, courts should "presume that Congress says what it means and means what it says and therefore must apply a statute as it is written, giving its terms the ordinary meaning that they carried when the statute was enacted." *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 512 (6th Cir. 2015) (internal citation omitted).   Here, the term "call" as enacted in 1991 necessarily could not have meant text messaging—the first text was not even sent until December 3, 1992.   *Jones*, 2025 WL 2042764, at *4 (citing Alex Fitzpatrick, *How Text Messages Are Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/).   Moreover, while reaching a contrary conclusion based on since-overruled precedent, the Sixth Circuit

has already acknowledged that "Congress did not address, or even intend to address, the treatment of text messages when considering and passing the TCPA." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). In *Keating*, Sixth Circuit in an unpublished decision analyzed Section 227(b), finding that the TCPA lacked a definition for "call" and that it was not contemplated by the statute, so it was required to follow the FCC's interpretation.[4]   *Id.* at 370. Now, "after *Loper Bright*, courts no longer defer to agency regulations as the authoritative (binding) interpretation of a statute." *United States v. Bricker*, 135 F.4th 427, 440 (6th Cir. 2025). And when the Court is free to interpret what Congress meant by the term "telephone call" unburdened by the FCC's interpretation, "[t]he 'ordinary' principle of statutory interpretation—to start with the text of the statute to ascertain its plain meaning—provides the answer." *Jones*, 2025 WL 2042764, at *5.

Even if the Court were to consider "today's American parlance" rather than how the term was enacted and understood in 1991, "'telephone call' means something entirely different from 'text message.'" *Id.* at *4. Indeed, "no ordinary person would think of a text message as a "'*telephone* call.'" *Davis*, 2025 WL 2491195, at *1. Put differently, "[n]o ordinary user of the English language would

---

[4]       Because the Sixth Circuit's disposition in Keating is unpublished, this Court is not bound by this holding. *See* 6 Cir. R. 32.1. Moreover, MK respectfully submits that in light of the Supreme Court's decisions in Loper Bright and McKesson, the Sixth Circuit would "overrule itself at the next available opportunity" and would decline to exercise Chevron deference over FCC interpretations of the TCPA. *See Hollis v. Erdos*, 480 F. Supp. 3d 823, 832 (S.D. Ohio 2020).

write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner." *Id.* And Plaintiff herself does not allege that MK called her; she alleges that it "delivered, or caused to be delivered, text messages." (Compl. ¶ 13.) Under the plain text of the TCPA, that is not enough.

Moreover, "in addition to the fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction." *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025). Indeed, unlike Section 227(c)(5), which only provides a right of action for "telephone calls," the TCPA elsewhere enumerates that a telephone "solicitation" could be "a telephone call *or message*." 47 U.S.C. § 227(a)(4) (emphasis added). So even assuming a "telephone message" in this context could be interpreted to include text messages—which would be inconsistent with how the term was understood in 1991—that Congress elsewhere enumerated both telephone calls and telephone messages evinces that the terms have two different meanings. *Davis*, 2025 WL 2491195, at *2; *accord Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022).

13

This legislative intent is furthered by Congress's 2018 amendments to the TCPA, where it did in fact enumerate a definition of "text message." (Exhibit E, Pub. L. 115-141, 132 Stat 1091-92 (2018), enacted as 47 U.S.C. § 227(e)(8)(C).) In defining text messages, Congress specifically exempted "real-time, two-way, voice or video communications"—in other words, telephone calls are not "text messages." 47 U.S.C. § 227(e)(8)(C). But while acknowledging telephone calls are not text messages elsewhere in the statute, Congress notably chose to *not* amend the right of action from Section 227(c) to also include telephone messages, text messages, or the like; thus, "it can be inferred that the decision to not alter [Section 227(c)] was just as intentional as the decision to alter" Section 227(e). *Arctic Exp., Inc. v. Del Monte Fresh Produce NA, Inc.*, 366 B.R. 786, 793 (S.D. Ohio 2007); *see also Regal Stone Ltd. v. Longs Drug Stores Cal., LLC*, 881 F. Supp. 2d 1123, 1129 (N.D. Cal. 2012) ("[W]here Congress amends part of a statute and leaves another part unchanged, a court must interpret Congress's inaction as satisfaction with the unamended portion, or at least tolerance of its inadequacies.").

In her Complaint, Plaintiff attempts to preempt this argument by alleging that "[a] text message is a 'call' as defined by the TCPA," citing two out-of-circuit cases. (Compl. ¶ 52 (citing *Duran v. La Boom Disco, Inc.,* 955 F.3d 279, 280 n.4 (2d Cir. 2020); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009). Neither has any bearing here. *Duran*, for instance, was vacated and remanded by

14

the United States Supreme Court. *La Boom Disco, Inc. v. Duran*, 141 S. Ct. 2509, 2509 (2021). And even if the Second Circuit's opinion had any remaining weight, its finding stems from the Ninth Circuit's holding in *Satterfield*, which only found that a "call" includes text messages after "[g]iving deference to the Federal Communications Commission" under *Chevron* 569 F.3d at 946. But this analysis has no bearing on the question before the Court here. First, the Supreme Court expressly overruled *Chevron*, holding that "District courts are not bound by the agency's interpretation" and that they "must determine the meaning of the law" under their own analysis. *McLaughlin Chiropractic Assocs. v. McKesson*, 606 U.S. 146, 155 (2025). Thus, to the extent that *Satterfield* or its progeny deferred to FCC pronouncements, those holdings have been abrogated by the Supreme Court and should be disregarded accordingly.

And beyond lacking legal basis, *Satterfield* does not control here because the relevant FCC pronouncement cited in that opinion concerns a different provision of the TCPA than the one at issue here. *Satterfield* relies on the FCC's 2003 Order, which "explicitly stated that the TCPA's prohibition on ATDSs" encompasses text messages. 569 F.3d at 952. But the TCPA's prohibition on ATDSs relates to Section 227(b), not Section 227(c). *Jones*, 2025 WL 2042764, at *4. Indeed, the relevant language in the 2003 Order itself "explicitly references only Section 227(b)" and does not "even address the specific provisions of the TCPA and its regulations at

issue in this case."  *Id.*  Thus, not only is the 2003 Order not entitled to deference

generally, but it has no applicability to Section 227(c) or whether the text messages

at issue violate the TCPA.[5]

## II.   Plaintiff's Conclusory Allegations Fail to State a Claim

Finally, even assuming that Plaintiff's claim could potentially fit within the

TCPA's statutory scheme, Plaintiff "must plead facts showing the cell phone is used

for residential purposes."  *Cunningham v. Rapid Cap. Funding, LLC/RCF*, No. 3:16-

cv-02629, 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and*

*recommendation adopted*, 2017 WL 3776165 (M.D. Tenn. Aug. 31, 2017).  Plaintiff

offers no facts in her copy-and-paste Complaint to establish *any* use of the 586

Number; rather, she offers just four paragraphs concluding that it is residential: that

the 586 Number " was used as her personal residential telephone number," that she

"does not have a landline," and that she does not use the 586 Number "for business

or commercial purposes."  (*See* Compl. ¶¶ 9–11.)  Plaintiff's conclusory allegation

that her phone was a "residential" device cannot survive a motion to dismiss.[6]  *E.g.,*

*Rapid Cap. Funding* 2017 WL 3574451, at *3;  *Hicks v. Alarm.com, Inc.*, No. 1:20-

---

[5]      For these same reasons, Plaintiff's attempt to avail herself of the 2003 FCC Order for the principle that cell phones are presumed residential is similarly meritless.  (Compl. ¶ 51.)

[6]      This is even so before considering that Plaintiff filed complaints before allegedly acquiring the 586 Number, where she claimed that "alleged that she was the "sole and regular *user*" of a different cell phone number and offered the same boilerplate allegations she offers here.  *Soboleski v. Party Pizza Roseville, Inc.,* No. 2:24-cv-13138, Dkt. 1 ¶ 8–11 (E.D. Mich. Nov. 26, 2024).

cv-00532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020); *Morgan*, 2018 WL 3580775, at *2; *Gilliam v. Reliance First Cap., LLC*, No. 2:21-cv-04774, 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023). Because Plaintiff pleads no facts that, if taken as true, would render the 586 Number a residential telephone, her claim fails.

## **CONCLUSION**

For the reasons set forth above, MK respectfully requests that this Honorable Court enter an Order dismissing Plaintiff's Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6), and further grant any and all other relief in favor of MK as is deemed just and appropriate.

Dated: November 6, 2025

Respectfully submitted,

By: */s/ James B. Saylor*
    James B. Saylor
    Kelley Drye & Warren LLP
    3 World Trade Center
    175 Greenwich Street
    New York, NY 10007
    Tel.: (212) 808-7800
    jsaylor@kelleydrye.com

    Benjamin J. Aloia
    Ralph Colasuonno
    Aloia Law, P.C.
    48 S. Mai Street, Ste. 3
    Mount Clemens, MI 48043
    Tel.: (586) 783-3300
    aloia@aloia.law
    colasuonno@aloia.law

    *Attorneys for Defendant*