# EXHIBIT B

105 STAT. 2394          PUBLIC LAW 102–243—DEC. 20, 1991

Public Law 102–243
102d Congress

### An Act

Dec. 20, 1991
[S. 1462]

To amend the Communications Act of 1934 to prohibit certain practices involving the use of telephone equipment.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Telephone
Consumer
Protection Act of
1991.
47 USC 609 note.

SECTION 1. SHORT TITLE.

This Act may be cited as the "Telephone Consumer Protection Act of 1991".

47 USC 227 note.

SEC. 2. FINDINGS.

The Congress finds that:

(1) The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.

(2) Over 30,000 businesses actively telemarket goods and services to business and residential customers.

(3) More than 300,000 solicitors call more than 18,000,000 Americans every day.

(4) Total United States sales generated through telemarketing amounted to $435,000,000,000 in 1990, a more than four-fold increase since 1984.

(5) Unrestricted telemarketing, however, can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety.

(6) Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.

(7) Over half the States now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate operations; therefore, Federal law is needed to control residential telemarketing practices.

(8) The Constitution does not prohibit restrictions on commercial telemarketing solicitations.

(9) Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices.

(10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

(11) Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.

(12) Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

(13) While the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call, the Federal Communications Commission should have the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy, or for noncommercial calls, consistent with the free speech protections embodied in the First Amendment of the Constitution.

(14) Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce.

(15) The Federal Communications Commission should consider adopting reasonable restrictions on automated or prerecorded calls to businesses as well as to the home, consistent with the constitutional protections of free speech.

## SEC. 3. RESTRICTIONS ON THE USE OF TELEPHONE EQUIPMENT.

(a) AMENDMENT.—Title II of the Communications Act of 1934 (47 U.S.C. 201 et seq.) is amended by adding at the end the following new section:

"SEC. 227. RESTRICTIONS ON THE USE OF TELEPHONE EQUIPMENT.          47 USC 227.

"(a) DEFINITIONS.—As used in this section—

"(1) The term 'automatic telephone dialing system' means equipment which has the capacity—

"(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

"(B) to dial such numbers.

"(2) The term 'telephone facsimile machine' means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

"(3) The term 'telephone solicitation' means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

"(4) The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission.

"(b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—

"(1) PROHIBITIONS.—It shall be unlawful for any person within the United States—

"(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of

the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

"(i) to any emergency telephone line (including any '911' line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

"(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

"(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

"(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B);

"(C) to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine; or

"(D) to use an automatic telephone dialing system in such a way that two or more telephone lines of a multi-line business are engaged simultaneously.

"(2) REGULATIONS; EXEMPTIONS AND OTHER PROVISIONS.—The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission—

"(A) shall consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent; and

"(B) may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe—

"(i) calls that are not made for a commercial purpose; and

"(ii) such classes or categories of calls made for commercial purposes as the Commission determines—

"(I) will not adversely affect the privacy rights that this section is intended to protect; and

"(II) do not include the transmission of any unsolicited advertisement.

"(3) PRIVATE RIGHT OF ACTION.—A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

"(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

"(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

"(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

"(c) PROTECTION OF SUBSCRIBER PRIVACY RIGHTS.—

"(1) RULEMAKING PROCEEDING REQUIRED.—Within 120 days after the date of enactment of this section, the Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. The proceeding shall—

"(A) compare and evaluate alternative methods and procedures (including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific 'do not call' systems, and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights, and in terms of their cost and other advantages and disadvantages;

"(B) evaluate the categories of public and private entities that would have the capacity to establish and administer such methods and procedures;

"(C) consider whether different methods and procedures may apply for local telephone solicitations, such as local telephone solicitations of small businesses or holders of second class mail permits;

"(D) consider whether there is a need for additional Commission authority to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, propose specific restrictions to the Congress; and

"(E) develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section.

"(2) REGULATIONS.—Not later than 9 months after the date of enactment of this section, the Commission shall conclude the rulemaking proceeding initiated under paragraph (1) and shall prescribe regulations to implement methods and procedures for protecting the privacy rights described in such paragraph in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers.

"(3) USE OF DATABASE PERMITTED.—The regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase. If the Commission determines to require such a database, such regulations shall—

"(A) specify a method by which the Commission will select an entity to administer such database;

"(B) require each common carrier providing telephone exchange service, in accordance with regulations prescribed by the Commission, to inform subscribers for telephone exchange service of the opportunity to provide notification,

in accordance with regulations established under this paragraph, that such subscriber objects to receiving telephone solicitations;

"(C) specify the methods by which each telephone subscriber shall be informed, by the common carrier that provides local exchange service to that subscriber, of (i) the subscriber's right to give or revoke a notification of an objection under subparagraph (A), and (ii) the methods by which such right may be exercised by the subscriber;

"(D) specify the methods by which such objections shall be collected and added to the database;

"(E) prohibit any residential subscriber from being charged for giving or revoking such notification or for being included in a database compiled under this section;

"(F) prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database;

"(G) specify (i) the methods by which any person desiring to make or transmit telephone solicitations will obtain access to the database, by area code or local exchange prefix, as required to avoid calling the telephone numbers of subscribers included in such database; and (ii) the costs to be recovered from such persons;

"(H) specify the methods for recovering, from persons accessing such database, the costs involved in identifying, collecting, updating, disseminating, and selling, and other activities relating to, the operations of the database that are incurred by the entities carrying out those activities;

"(I) specify the frequency with which such database will be updated and specify the method by which such updating will take effect for purposes of compliance with the regulations prescribed under this subsection;

"(J) be designed to enable States to use the database mechanism selected by the Commission for purposes of administering or enforcing State law;

"(K) prohibit the use of such database for any purpose other than compliance with the requirements of this section and any such State law and specify methods for protection of the privacy rights of persons whose numbers are included in such database; and

"(L) require each common carrier providing services to any person for the purpose of making telephone solicitations to notify such person of the requirements of this section and the regulations thereunder.

"(4) CONSIDERATIONS REQUIRED FOR USE OF DATABASE METHOD.—If the Commission determines to require the database mechanism described in paragraph (3), the Commission shall—

"(A) in developing procedures for gaining access to the database, consider the different needs of telemarketers conducting business on a national, regional, State, or local level;

"(B) develop a fee schedule or price structure for recouping the cost of such database that recognizes such differences and—

"(i) reflect the relative costs of providing a national, regional, State, or local list of phone numbers of

subscribers who object to receiving telephone solicitations;

"(ii) reflect the relative costs of providing such lists on paper or electronic media; and

"(iii) not place an unreasonable financial burden on small businesses; and

"(C) consider (i) whether the needs of telemarketers operating on a local basis could be met through special markings of area white pages directories, and (ii) if such directories are needed as an adjunct to database lists prepared by area code and local exchange prefix.

"(5) PRIVATE RIGHT OF ACTION.—A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

"(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

"(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

"(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

"(6) RELATION TO SUBSECTION (B).—The provisions of this subsection shall not be construed to permit a communication prohibited by subsection (b).

"(d) TECHNICAL AND PROCEDURAL STANDARDS.—

"(1) PROHIBITION.—It shall be unlawful for any person within the United States—

"(A) to initiate any communication using a telephone facsimile machine, or to make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection, or to use any telephone facsimile machine or automatic telephone dialing system in a manner that does not comply with such standards; or

"(B) to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual.

"(2) TELEPHONE FACSIMILE MACHINES.—The Commission shall revise the regulations setting technical and procedural stand-

Regulations.

ards for telephone facsimile machines to require that any such machine which is manufactured after one year after the date of enactment of this section clearly marks, in a margin at the top or bottom of each transmitted page or on the first page of each transmission, the date and time sent, an identification of the business, other entity, or individual sending the message, and the telephone number of the sending machine or of such business, other entity, or individual.

"(3) ARTIFICIAL OR PRERECORDED VOICE SYSTEMS.—The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that—

"(A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual; and

"(B) any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls.

"(e) EFFECT ON STATE LAW.—

"(1) STATE LAW NOT PREEMPTED.—Except for the standards prescribed under subsection (d) and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits—

"(A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;

"(B) the use of automatic telephone dialing systems;

"(C) the use of artificial or prerecorded voice messages; or

"(D) the making of telephone solicitations.

"(2) STATE USE OF DATABASES.—If, pursuant to subsection (c)(3), the Commission requires the establishment of a single national database of telephone numbers of subscribers who object to receiving telephone solicitations, a State or local authority may not, in its regulation of telephone solicitations, require the use of any database, list, or listing system that does not include the part of such single national datebase that relates to such State.

"(f) ACTIONS BY STATES.—

"(1) AUTHORITY OF STATES.—Whenever the attorney general of a State, or an official or agency designated by a State, has reason to believe that any person has engaged or is engaging in a pattern or practice of telephone calls or other transmissions to residents of that State in violation of this section or the regulations prescribed under this section, the State may bring a civil action on behalf of its residents to enjoin such calls, an action to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions. If the court finds the defendant willfully or knowingly violated such regulations, the court may, in its discretion, increase the amount of the award to

an amount equal to not more than 3 times the amount available under the preceding sentence.

"(2) EXCLUSIVE JURISDICTION OF FEDERAL COURTS.—The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under this subsection. Upon proper application, such courts shall also have jurisdiction to issue writs of mandamus, or orders affording like relief, commanding the defendant to comply with the provisions of this section or regulations prescribed under this section, including the requirement that the defendant take such action as is necessary to remove the danger of such violation. Upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.

"(3) RIGHTS OF COMMISSION.—The State shall serve prior written notice of any such civil action upon the Commission and provide the Commission with a copy of its complaint, except in any case where such prior notice is not feasible, in which case the State shall serve such notice immediately upon instituting such action. The Commission shall have the right (A) to intervene in the action, (B) upon so intervening, to be heard on all matters arising therein, and (C) to file petitions for appeal.

"(4) VENUE; SERVICE OF PROCESS.—Any civil action brought under this subsection in a district court of the United States may be brought in the district wherein the defendant is found or is an inhabitant or transacts business or wherein the violation occurred or is occurring, and process in such cases may be served in any district in which the defendant is an inhabitant or where the defendant may be found.

"(5) INVESTIGATORY POWERS.—For purposes of bringing any civil action under this subsection, nothing in this section shall prevent the attorney general of a State, or an official or agency designated by a State, from exercising the powers conferred on the attorney general or such official by the laws of such State to conduct investigations or to administer oaths or affirmations or to compel the attendance of witnesses or the production of documentary and other evidence.

"(6) EFFECT ON STATE COURT PROCEEDINGS.—Nothing contained in this subsection shall be construed to prohibit an authorized State official from proceeding in State court on the basis of an alleged violation of any general civil or criminal statute of such State.

"(7) LIMITATION.—Whenever the Commission has instituted a civil action for violation of regulations prescribed under this section, no State may, during the pendency of such action instituted by the Commission, subsequently institute a civil action against any defendant named in the Commission's complaint for any violation as alleged in the Commission's complaint.

"(8) DEFINITION.—As used in this subsection, the term 'attorney general' means the chief legal officer of a State.".

(b) CONFORMING AMENDMENT.—Section 2(b) of the Communications Act of 1934 (47 U.S.C. 152(b)) is amended by striking "Except as provided" and all that follows through "and subject to the provisions" and inserting "Except as provided in sections 223 through 227, inclusive, and subject to the provisions".

105 STAT. 2402          PUBLIC LAW 102–243—DEC. 20, 1991

47 USC 227 note.

(c) DEADLINE FOR REGULATIONS; EFFECTIVE DATE.—

(1) REGULATIONS.—The Federal Communications Commission shall prescribe regulations to implement the amendments made by this section not later than 9 months after the date of enactment of this Act.

(2) EFFECTIVE DATE.—The requirements of section 228 of the Communications Act of 1934 (as added by this section), other than the authority to prescribe regulations, shall take effect one year after the date of enactment of this Act.

### SEC. 4. AM RADIO SERVICE.

47 USC 331.

Section 331 of the Communications Act of 1934 is amended—

(1) in the heading of such section, by inserting "AND AM RADIO STATIONS" after "TELEVISION STATIONS";

(2) by inserting "(a) VERY HIGH FREQUENCY STATIONS.—" after "SEC. 331."; and

(3) by adding at the end the following new subsection:

"(b) AM RADIO STATIONS.—It shall be the policy of the Commission, in any case in which the licensee of an existing AM daytime-only station located in a community with a population of more than 100,000 persons that lacks a local full-time aural station licensed to that community and that is located within a Class I station primary service area notifies the Commission that such licensee seeks to provide full-time service, to ensure that such a licensee is able to place a principal community contour signal over its entire community of license 24 hours a day, if technically feasible. The Commission shall report to the appropriate committees of Congress within 30 days after the date of enactment of this Act on how it intends to meet this policy goal.".

Reports.

Approved December 20, 1991.

---

LEGISLATIVE HISTORY—S. 1462:

SENATE REPORTS: No. 102–178 (Comm. on Commerce, Science, and
        Transportation).
CONGRESSIONAL RECORD, Vol. 137 (1991):
    Nov. 7, considered and passed Senate.
    Nov. 26, considered and passed House, amended.
    Nov. 27, Senate concurred in House amendment.
WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 27 (1991):
    Dec. 20, Presidential statement.