# EXHIBIT E

PUBLIC LAW 115–141—MAR. 23, 2018     132 STAT. 1091

pursuant to an appointment made under section 8G of the Inspector General Act of 1978 (5 U.S.C. App.)—

(1) may continue so serving until the President makes an appointment under section 3(a) of such Act with respect to the Commission consistent with the amendments made by subsection (a); and

(2) shall, while serving under paragraph (1), remain subject to the provisions of section 8G of such Act which, immediately before the date of the enactment of this Act, applied with respect to the Inspector General of the Commission and suffer no reduction in pay.

**SEC. 502. AUTHORITY OF CHIEF INFORMATION OFFICER.**         47 USC 155a.

(a) IN GENERAL.—The Commission shall ensure that the Chief Information Officer of the Commission has a significant role in—

(1) the decision-making process for annual and multi-year planning, programming, budgeting, and execution decisions, related reporting requirements, and reports related to information technology;

(2) the management, governance, and oversight processes related to information technology; and

(3) the hiring of personnel with information technology responsibilities.

(b) CIO APPROVAL.—The Chief Information Officer of the Commission, in consultation with the Chief Financial Officer of the Commission and budget officials, shall specify and approve the allocation of amounts appropriated to the Commission for information technology, consistent with the provisions of appropriations Acts, budget guidelines, and recommendations from the Director of the Office of Management and Budget.

**SEC. 503. SPOOFING PREVENTION.**

(a) EXPANDING AND CLARIFYING PROHIBITION ON MISLEADING OR INACCURATE CALLER IDENTIFICATION INFORMATION.—

(1) COMMUNICATIONS FROM OUTSIDE THE UNITED STATES.—Section 227(e)(1) of the Communications Act of 1934 (47 U.S.C. 227(e)(1)) is amended by striking "in connection with any telecommunications service or IP-enabled voice service" and inserting "or any person outside the United States if the recipient is within the United States, in connection with any voice service or text messaging service".

(2) COVERAGE OF TEXT MESSAGES AND VOICE SERVICES.—Section 227(e)(8) of the Communications Act of 1934 (47 U.S.C. 227(e)(8)) is amended—

(A) in subparagraph (A), by striking "telecommunications service or IP-enabled voice service" and inserting "voice service or a text message sent using a text messaging service";

(B) in the first sentence of subparagraph (B), by striking "telecommunications service or IP-enabled voice service" and inserting "voice service or a text message sent using a text messaging service"; and

(C) by striking subparagraph (C) and inserting the following:

"(C) TEXT MESSAGE.—The term 'text message'—

"(i) means a message consisting of text, images, sounds, or other information that is transmitted to or from a device that is identified as the receiving

132 STAT. 1092  PUBLIC LAW 115–141—MAR. 23, 2018

or transmitting device by means of a 10-digit telephone number or N11 service code;

"(ii) includes a short message service (commonly referred to as 'SMS') message and a multimedia message service (commonly referred to as 'MMS') message; and

"(iii) does not include—

"(I) a real-time, two-way voice or video communication; or

"(II) a message sent over an IP-enabled messaging service to another user of the same messaging service, except a message described in clause (ii).

"(D) TEXT MESSAGING SERVICE.—The term 'text messaging service' means a service that enables the transmission or receipt of a text message, including a service provided as part of or in connection with a voice service.

"(E) VOICE SERVICE.—The term 'voice service'—

"(i) means any service that is interconnected with the public switched telephone network and that furnishes voice communications to an end user using resources from the North American Numbering Plan or any successor to the North American Numbering Plan adopted by the Commission under section 251(e)(1); and

"(ii) includes transmissions from a telephone facsimile machine, computer, or other device to a telephone facsimile machine.".

(3) TECHNICAL AMENDMENT.—Section 227(e) of the Communications Act of 1934 (47 U.S.C. 227(e)) is amended in the heading by inserting "MISLEADING OR" before "INACCURATE".

(4) REGULATIONS.—

(A) IN GENERAL.—Section 227(e)(3)(A) of the Communications Act of 1934 (47 U.S.C. 227(e)(3)(A)) is amended by striking "Not later than 6 months after the date of enactment of the Truth in Caller ID Act of 2009, the Commission" and inserting "The Commission".

47 USC 227 note.

(B) DEADLINE.—The Commission shall prescribe regulations to implement the amendments made by this subsection not later than 18 months after the date of enactment of this Act.

47 USC 227 note.

(5) EFFECTIVE DATE.—The amendments made by this subsection shall take effect on the date that is 6 months after the date on which the Commission prescribes regulations under paragraph (4).

47 USC 227a.

(b) CONSUMER EDUCATION MATERIALS ON HOW TO AVOID SCAMS THAT RELY UPON MISLEADING OR INACCURATE CALLER IDENTIFICATION INFORMATION.—

(1) DEVELOPMENT OF MATERIALS.—Not later than 1 year after the date of enactment of this Act, the Commission, in coordination with the Federal Trade Commission, shall develop consumer education materials that provide information about—

(A) ways for consumers to identify scams and other fraudulent activity that rely upon the use of misleading or inaccurate caller identification information; and

PUBLIC LAW 115–141—MAR. 23, 2018          132 STAT. 1093

(B) existing technologies, if any, that a consumer can use to protect against such scams and other fraudulent activity.

(2) CONTENTS.—In developing the consumer education materials under paragraph (1), the Commission shall—

(A) identify existing technologies, if any, that can help consumers guard themselves against scams and other fraudulent activity that rely upon the use of misleading or inaccurate caller identification information, including—

(i) descriptions of how a consumer can use the technologies to protect against such scams and other fraudulent activity; and

(ii) details on how consumers can access and use the technologies; and

(B) provide other information that may help consumers identify and avoid scams and other fraudulent activity that rely upon the use of misleading or inaccurate caller identification information.

(3) UPDATES.—The Commission shall ensure that the consumer education materials required under paragraph (1) are updated on a regular basis.

(4) WEBSITE.—The Commission shall include the consumer education materials developed under paragraph (1) on its website.

(c) GAO REPORT ON COMBATING THE FRAUDULENT PROVISION OF MISLEADING OR INACCURATE CALLER IDENTIFICATION INFORMATION.—

(1) IN GENERAL.—The Comptroller General of the United States shall conduct a study of the actions the Commission and the Federal Trade Commission have taken to combat the fraudulent provision of misleading or inaccurate caller identification information, and the additional measures that could be taken to combat such activity.

(2) REQUIRED CONSIDERATIONS.—In conducting the study under paragraph (1), the Comptroller General shall examine—

(A) trends in the types of scams that rely on misleading or inaccurate caller identification information;

(B) previous and current enforcement actions by the Commission and the Federal Trade Commission to combat the practices prohibited by section 227(e)(1) of the Communications Act of 1934 (47 U.S.C. 227(e)(1));

(C) current efforts by industry groups and other entities to develop technical standards to deter or prevent the fraudulent provision of misleading or inaccurate caller identification information, and how such standards may help combat the current and future provision of misleading or inaccurate caller identification information; and

(D) whether there are additional actions the Commission, the Federal Trade Commission, and Congress should take to combat the fraudulent provision of misleading or inaccurate caller identification information.

(3) REPORT.—Not later than 18 months after the date of enactment of this Act, the Comptroller General shall submit to the Committee on Energy and Commerce of the House of Representatives and the Committee on Commerce, Science, and Transportation of the Senate a report on the findings of the study under paragraph (1), including any recommendations

132 STAT. 1094   PUBLIC LAW 115–141—MAR. 23, 2018

regarding combating the fraudulent provision of misleading or inaccurate caller identification information.

47 USC 227 note.

(d) RULE OF CONSTRUCTION.—Nothing in this section, or the amendments made by this section, shall be construed to modify, limit, or otherwise affect any rule or order adopted by the Commission in connection with—

(1) the Telephone Consumer Protection Act of 1991 (Public Law 102–243; 105 Stat. 2394) or the amendments made by that Act; or

(2) the CAN–SPAM Act of 2003 (15 U.S.C. 7701 et seq.).

**SEC. 504. REPORT ON PROMOTING BROADBAND INTERNET ACCESS SERVICE FOR VETERANS.**

(a) VETERAN DEFINED.—In this section, the term "veteran" has the meaning given the term in section 101 of title 38, United States Code.

(b) REPORT REQUIRED.—Not later than 1 year after the date of the enactment of this Act, the Commission shall submit to Congress a report on promoting broadband Internet access service for veterans, in particular low-income veterans and veterans residing in rural areas. In such report, the Commission shall—

(1) examine such access and how to promote such access; and

(2) provide findings and recommendations for Congress with respect to such access and how to promote such access.

(c) PUBLIC NOTICE AND OPPORTUNITY TO COMMENT.—In preparing the report required by subsection (b), the Commission shall provide the public with notice and an opportunity to comment on broadband Internet access service for veterans, in particular low-income veterans and veterans residing in rural areas, and how to promote such access.

47 USC 254 note.

**SEC. 505. METHODOLOGY FOR COLLECTION OF MOBILE SERVICE COVERAGE DATA.**

(a) DEFINITIONS.—In this section—

(1) the term "commercial mobile data service" has the meaning given the term in section 6001 of the Middle Class Tax Relief and Job Creation Act of 2012 (47 U.S.C. 1401);

(2) the term "commercial mobile service" has the meaning given the term in section 332(d) of the Communications Act of 1934 (47 U.S.C. 332(d));

(3) the term "coverage data" means, if commercial mobile service or commercial mobile data service is available, general information about the service, which may include available speed tiers, radio frequency signal levels, and network and performance characteristics; and

(4) the term "Universal Service program" means the universal service support mechanisms established under section 254 of the Communications Act of 1934 (47 U.S.C. 254) and the regulations issued under that section.

(b) METHODOLOGY ESTABLISHED.—Not later than 180 days after the conclusion of the Mobility Fund Phase II Auction, the Commission shall promulgate regulations to establish a methodology that shall apply to the collection of coverage data by the Commission for the purposes of—

(1) the Universal Service program; or

(2) any other similar program.