## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| VICTORIA SOBOLESKI, | ) | |
| *on behalf of herself and* | ) | Civil Action No.: 25-cv-11838 |
| *others similarly situated*, | ) | |
| | ) | Class Action Complaint |
| Plaintiff, | ) | |
| | ) | District Judge Denise Page Hood |
| | ) | Magistrate Judge Curtis Ivy, Jr. |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL KORS (USA), INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

NOW COMES Plaintiff, Victoria Soboleski by and through her attorneys,

and respectfully requests this Honorable Court to enter an order denying

Defendant's above-entitled motion for the reasons set forth in the underlying brief.


Dated: December 26, 2025      PLAINTIFF, on behalf of herself
and others similarly situated,


*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| VICTORIA SOBOLESKI, | ) | |
| *on behalf of herself and* | ) | Civil Action No.: 25-cv-11838 |
| *others similarly situated*, | ) | |
| | ) | Class Action Complaint |
| Plaintiff, | ) | |
| | ) District Judge Denise Page Hood | |
| | )Magistrate Judge Curtis Ivy, Jr. | |
| v. | ) | |
| | ) | |
| MICHAEL KORS (USA), INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.      Whether the Court should deny Defendant's Motion to Dismiss because the Telephone Consumer Protection Act's National Do Not Call Registry provision protects "residential telephone *subscriber[s]*"—not simply *residential telephones*—and the term "residential telephone *subscriber*" encompasses all types of telephone lines and devices (landline and cellular) so long as they are used for personal purposes.

**Suggested Answer**:  Yes.

2.      Whether the Court should deny Defendant's Motion to Dismiss because the TCPA's Do Not Call Registry provision prohibits certain "telephone calls" and "telephone solicitation[s]", which both include text messages.

**Suggested Answer**:  Yes.

3.      Whether Plaintiff plausibly alleges that her cellular telephone number is a "residential" number protected by the TCPA's National Do Not Call Registry provisions by pleading personal, non-business use of the number.

**Suggested Answer**:  Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u><br><u>FOR THE RELIEF SOUGHT</u>

*Pickens v. Hamilton-Ryker IT Solutions, LLC*, 133 F.4th 575 (6th Cir. 2025)

*Keating v. Peterson's Nelnet, Inc.*, 615 F. App'x 365 (6th Cir. 2015)

*Dobronski v. 1-800-Law-Firm, PLLC*, 2025 U.S. Dist. LEXIS 91963 (E.D. Mich. Apr. 17, 2025)

*Mujahid v. Newity, LLC*, 2025 WL 3140725 (N.D. Ill. 2025)

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)

*Wilson v. Medvidi*, 2025 WL 2856295 (N.D. Cal. 2025)

*Wilson v. Skopos Fin., LLC*, 2025 WL 2029274 (D. Or. 2025)

## TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 2

ARGUMENT ................................................................. 3

I. The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages. ........................................................ 3

   A. The plain meaning of the word "call" includes text messages...................... 3

   B. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions. ................................................ 5

     a. Defendant's attempt to push a narrower interpretation is unpersuasive..... 6

     b. Even if ambiguity remained, § 227(c) is an express delegation, and the FCC's reasoned rules merit judicial respect. ....................................... 12

II. Cellular Telephone Numbers are Protected under the TCPA's National Do Not Call Registry Provision and the Plaintiff alleges that her Telephone is a Residential Number. ................................................................. 14

CONCLUSION ................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*,
708 F.3d 737 (6th Cir. 2013) .................................................................. 3

*Black v. Ideal Concepts, Inc.*,
2025 U.S. Dist. LEXIS 76417 (W.D. Tex. Apr. 21, 2025) .................................. 21

*Cacho v. McCarthy & Kelly LLP*,
739 F. Supp. 3d 195 (S.D.N.Y. 2024) ........................................................ 6, 14–17

*Cunningham v. Politi*,
2019 U.S. Dist. LEXIS 102545 ............................................................ 21

*Davis v. CVS Pharmacy, Inc.*,
2025 WL 2491195 (N.D. Fla. 2025) ........................................................ 6, 8–10

*Dawson v. Porch.com*,
2024 WL 4765159 (W.D. Wash. 2024) ..................................................... 10

*Delek US Holdings, Inc. v. United States*,
32 F.4th 495 (6th Cir. 2022) ............................................................. 3

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980) ..................................................................... 7

*Ferrell v. Colourpop Cosmetics, LLC*,
2025 U.S. Dist. LEXIS 140893 (C.D. Cal. July 22, 2025) ................................. 20

*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019) ..................................................................... 18

*Gaker v. Q3M Ins. Sols.* ................................................................. 21

*Gill v. Align Tech., Inc.*,
2022 U.S. Dist. LEXIS 87464 (E.D. Wis. May 16, 2022) ................................... 23

*Gonzalez v. Burger L., LLC*,
2024 WL 1014058 (E.D. Mo. Mar. 8, 2024) ................................................ 25

*Harriel v. Bealls, Inc.*,
2025 WL 2379617 (M.D. Fla. 2025) ..................................................... 6

*Henson v. Santander Consumer USA Inc.*,
582 U.S. 79 (2017) ....................................................................... 4, 10

*Hicks v. Alarm.com Inc.*,
2020 U.S. Dist. LEXIS 157433 (E.D. Va. Aug. 6, 2020) .................................... 23

*Hirsch v. USHealth Advisors, LLC*,
337 F.R.D. 118 (N.D. Tex. 2020) ........................................................ 22

*Howell v. Smartmatch Ins. Agency, LLC*,
2023 WL 6478881 (W.D. Mo. Sept. 29, 2023) .................................................. 25

*Hudson v. Palm Beach Tan, Inc.*,
2024 WL 4190513 (M.D.N.C. 2024) ........................................................ 5, 21

*In re Rules & Regulations Implementing the TCPA*,
18 FCC Rcd. 14014 (2003) ......................................................... 1, 19, 24

*Isaacs v. USHealth Advisors, LLC*,
2025 WL 2268359 (N.D. Ga. Aug. 7, 2025) ................................................ 15–16, 20

*Jackson v. Direct Bldg. Supplies LLC*,
2024 WL 184449 (M.D. Pa. Jan. 17, 2024) ................................................ 16–17

*Jones v. Blackstone Medical Services*,
792 F. Supp. 3d 894 (C.D. Ill. 2025) ........................................................ 6, 8–10

*Keating v. Peterson's Nelnet, Inc.*,
615 F. App'x 365 (6th Cir. 2015) ..................................................... 1, 5, 7

*Lirones v. Leaf Home Water Sols., LLC*,
2024 WL 4198134 (N.D. Ohio Sept. 16, 2024) ................................................ 16

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ................................................................... 12–14

*Lozano v. Twentieth Century Fox Film Corp.*,
702 F. Supp. 2d 999 (N.D. Ill. 2010) ........................................................ 5, 8

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
145 S. Ct. 2006 (2025) ................................................................. 20

*Mims v. Arrow Fin. Servs., LLC*,
565 U.S. 368 (2012) .................................................................... 17

*Moore v. Triumph CSR Acquisition, LLC*,
2023 U.S. Dist. LEXIS 220876 ................................................... 22

*Mujahid v. Newity, LLC*,
2025 WL 3140725 (N.D. Ill. 2025) .................................... 4–5, 14

*Myrick v. Adapthealth, LLC*,
2023 WL 5162396 (E.D. Tex. June 26, 2023) ............................. 21

*N.L.R.B. v. SW Gen., Inc.*,
580 U.S. 288 (2017) .................................................................... 18

*Pickens v. Hamilton-Ryker IT Sols., LLC*,
133 F.4th 575 (6th Cir. 2025) ..................................................... 13

*Robertson v. Mortgage Research Center, LLC*,
2024 WL 5046604 (W.D. Mo. Dec. 9, 2024) .............................. 25

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ............................................... 1, 3, 7

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 168 (2025) .............................................................. 13, 19

*Shelton v. Fast Advance Funding, LLC*,
378 F. Supp. 3d 356 (E.D. Pa. 2019) .......................................... 21

*Shelton v. Pro Source Lending Grp. LLC*,
2025 WL 817485 (E.D. Pa. Mar. 14, 2025) ................................ 21

*South Dakota v. Yankton Sioux Tribe*,
522 U.S. 329 (1998) .................................................................... 12

*Squillacote v. United States*,
739 F.2d 1208 (7th Cir. 1984) ...................................................... 8

*Thompson v. Vintage Stock, Inc.*,
2024 WL 492052 (E.D. Mo. Feb. 8, 2024) ........................................................ 25

*Wilson v. Better Mortg. Corp.*,
2025 U.S. Dist. LEXIS 251694 (S.D.N.Y. Dec. 5, 2025) .................................... 5

*Wilson v. Hard Eight Nutrition LLC*,
2025 WL 1784815 (D. Or. June 27, 2025) .................................................. 15–16,
20

*Wilson v. Medvidi*,
2025 WL 2856295 (N.D. Cal. 2025) .............................................................. 4, 7–8

*Wilson v. Skopos Fin., LLC*,
2025 WL 2029274 (D. Or. 2025) ....................................................................... 12

*Wis. Cent. Ltd. v. United States*,
585 U.S. 274 (2018) ........................................................................................... 7

## STATUTES

47 U.S.C. § 227(a)(2)(A) ................................................................................... 17
47 U.S.C. § 227(a)(4) ........................................................................................ 14
47 U.S.C. § 227(b)(1)(A)(iii) .................................................................... 4, 7, 15
47 U.S.C. § 227(b)(1)(C) ..................................................................................... 7
47 U.S.C. § 227(c)(1) ............................................................................ 12–16, 19
47 U.S.C. § 227(c)(3) .............................................................................. 1–2, 6, 14
47 U.S.C. § 227(c)(3)(F) .......................................................................... 1, 6, 10
47 U.S.C. § 227(c)(5) ................................................................................... 2–3, 6
47 U.S.C. § 227(d) ............................................................................................... 7
47 U.S.C. § 227(e)(8)(A)–(B) .................................................................... 10–12

## REGULATIONS

47 C.F.R. § 64.1200(c)(2) ................................................................................... 1
47 C.F.R. § 64.1200(e) ........................................................................................ 1
47 C.F.R. § 64.2305(d) ...................................................................................... 17

**OTHER AUTHORITIES**

In re Advanced Methods to Target & Eliminate Unlawful Robocalls,
33 FCC Rcd 12024 (F.C.C. Dec. 13, 2018) ........................................................... 24

Paging Network, Inc., Annual Report (1991) ......................................................... 4

Black's Law Dictionary (6th ed. 1990) ("Message") ........................................... 15

Oxford English Dictionary (2d ed. 1989) .............................................................. 3

Random House Webster's College Dictionary (1991) ........................................... 3

Webster's Third New International Dictionary (2002) .......................................... 3

## INTRODUCTION

Plaintiff alleges that Defendant Michael Kors sent multiple marketing text messages to her cellular telephone number after she registered that number on the National Do Not Call Registry and without her prior express consent. (ECF No. 1 ¶¶ 12–18). The Telephone Consumer Protection Act of 1991 ("TCPA") authorizes the Federal Communications Commission ("FCC") to establish "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," and to prohibit telemarketers from "making or transmitting a telephone solicitation" to any number on that list. 47 U.S.C. § 227(c)(3); 47 U.S.C. § 227(c)(3)(F).

Consistent with that statutory delegation, the Federal Communications Commission's implementing regulations apply the National Do Not Call Registry protections to wireless telephone numbers and prohibit covered solicitations by text message. 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(e); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003). Courts likewise recognize that, as used in the TCPA, it is reasonable to conclude that a "call" encompasses a text message. *See Keating v. Peterson's Nelnet, Inc.,* 615 F. App'x 365, 370 (6th Cir. 2015); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 953–54 (9th Cir. 2009).

At the pleading stage, Plaintiff's allegations that she uses the number for personal, non-business purposes, that she registered it on the National Do Not Call

Registry, and that Defendant sent multiple telemarketing texts to that number more than thirty-one days after registration plausibly state a claim for relief under 47 U.S.C. § 227(c)(5).

## BACKGROUND

Plaintiff alleges she has been the subscriber of cellular telephone number (586) 420-XXXX since March 2025, uses it as a personal residential number, does not have a landline, and does not use the number for business purposes. (ECF No. 1 ¶¶ 8–11). Plaintiff further alleges she registered that number on the National Do-Not-Call Registry on March 27, 2025. (ECF No. 1 ¶ 12). After that registration, the Defendant sent multiple text messages to Plaintiff's number, including in April and May 2025, more than thirty-one days after Plaintiff registered her number on the Do-Not-Call Registry. (ECF No. 1 ¶¶ 13, 15). Plaintiff alleges the texts were intended for someone unknown to her, were sent to advertise and market Michael Kors's goods, and were sent without Plaintiff's prior express consent or permission. (ECF No. 1 ¶¶ 16–18). Based on these allegations, Plaintiff asserts a claim under 47 U.S.C. § 227(c)(5), alleging Michael Kors delivered more than one solicitation text message within a 12-month period in violation of the FCC's Do-Not-Call implementing regulations, including 47 C.F.R. § 64.1200(c) and (e). (ECF No. 1 ¶¶ 52–55).

# ARGUMENT

## I.   The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages.

The text, structure, and purpose of § 227(c) foreclose Michael Kors's voice-call-only theory. Michael Kors contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect.

### A.   The plain meaning of the word "call" includes text messages.

To interpret a statutory term, courts look to its "ordinary meaning" when the statute was enacted, often "by reference to dictionaries in use at the time." *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 498 (6th Cir. 2022). Here, the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir 2009) (quoting *Webster's Third New International Dictionary* (2002)).[1]

Like other courts, the Sixth Circuit has held that this definition—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress intended in 1991, when the TCPA was enacted. *Ashland Hosp. Corp. v.*

---

[1] This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed. 1989) ("a summons or communication by telephone").

*Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013). And texting is, of course, a means of communicating with someone by telephone. So, the established definition of "telephone call" readily encompasses texts. *See, e.g.*, *Wilson v. Medvidi*, 2025 WL 2856295, at *2 (N.D. Cal. 2025); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2 (N.D. Ill. 2025).

The established meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. Absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). The word "call" is used extensively in the provisions of the statute that prohibit automatic dialing technology and robocalls, which were also part of the statute when it was first enacted in 1991. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call.[2] So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call'

---

[2]  *See, e.g.*, Paging Network, Inc., Annual Report, at 8 (1991), https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number").

4

cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010).

Courts have therefore "routinely found that the phrase 'call' in subsection (b) … includes text messages." *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *7 n.6 (M.D.N.C. 2024); *see, e.g.*, *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). And that "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

Consistent with this, in the past few months, various district courts have held that § 227(c) applies to text messages because "the ordinary public meaning of 'telephone call' when the TCPA was enacted in 1991 was … a communication made by telephone," and "[t]ext messages fit easily within that broad definition." *See, e.g., Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, *14 (S.D.N.Y. Dec. 5, 2025); *Wilson v. Medvidi*, 2025 WL 2856295, at *2 (N.D. Cal. 2025); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2 (N.D. Ill. 2025). This Court should hold the same.

**B.    That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.**

Michael Kors's argument focuses mainly on the single use of the word the "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in

context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers. *See, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at \*2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

### a. Defendant's attempt to push a narrower interpretation is unpersuasive.

Michael Kors would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the words "telephone call" in section 227(c)(5) can only mean "voice call," and therefore the statute categorically excludes text messages. Its arguments mainly rely on two recent district court cases, *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025), and *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), *currently on appeal as* No. 25-2398 (7th Cir. Aug. 12, 2025). But none of the arguments made by Michael Kors or by those cases is persuasive.

First, Michael Kors argues that "telephone call" must refer to a "voice

transmission" because of dictionary definitions.

Michael Kors's dictionary-based focus on the word 'telephone' is a red herring. The dispute is not whether a text is sent to a telephone number—it is. The question is whether Congress used the word 'call' in § 227(c)(5) to exclude modern written telemarketing communications transmitted to telephone numbers protected by the Do-Not-Call regime. A text message is sent to a "telephone number," just like other transmissions that can violate the Do Not Call List rules. *See* 47 U.S.C. § 227(c)(3)(F). And other provisions of the TCPA refute Michael Kors's restrictive interpretation of the word "telephone," by using the word in relation to written communication such as messages to pagers and faxes. *See, e.g.*, 47 U.S.C. § 227(b)(1)(A)(iii) (pages); *id.* § 227(b)(1)(C) (faxes); *id.* § 227(d) (faxes). That's why the key question is the meaning of the word "call," not the meaning of the word "telephone." *See, e.g.*, *Satterfield*, 569 F.3d at 953–54 & n.3; *Keating*, 615 F. App'x at 370.

Michael Kors (echoing *Jones*) insists that telephone call cannot encompass text messages because text messaging did not yet exist in 1991. *See Jones*, 2025 WL 2042764, at *4. That's not how statutory interpretation works. It's true that text messaging did not exist in 1991, so Congress didn't have texting specifically in mind. *See Keating*, 615 F. App'x at 370; *Medvidi*, 2025 WL 2856295, at *2. But statutes are not "confined to the particular applications contemplated by the

legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980). "While every statute's *meaning* is fixed at the time of enactment," it is commonplace that "new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). That's why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs and Corollas. *See Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984) (similar example with Volkswagens).

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *2. The 1991 meaning of "call"—which "refers to both oral and written communications"—is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007.

Michael Kors says that in ordinary conversation it sounds odd to refer to a text message as a telephone call. *Jones* and *Davis* also rely on that same intuition—both courts found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends there." *Davis*, 2025 WL 2491195, at *1.[3] However, Michael Kors's reliance on modern colloquial usage is

---

[3] *See Davis*, 2025 WL 2491195, at *1 ("No normal person refers to a text message, or thinks of a text message, as a 'call.'"); *Jones*, 792 F. Supp. 3d at 899 ("[I]n today's American parlance, 'telephone call' means something entirely different from 'text

misplaced. Statutory interpretation looks to the term's ordinary meaning at enactment, and modern linguistic habits can mislead when technology and vocabulary evolve. Courts have recognized this principle in multiple contexts, and it applies here: the relevant question is what "call" meant in 1991, not how people casually speak in 2025.

Michael Kors also has no good answer for nearby uses of the word "call" in section 227(b), the autodialer provisions of the original TCPA. Michael Kors and its cases do not dispute that "call" covers text messages in the autodialer provisions. Nor could they: The meaning of "call" is especially clear in section 227(b) because it's used there to describe a (typically text-focused) transmission to a "paging service." *See supra*, Part I.A. In response, all Michael Kors's cases say is that section 227(b) is a different provision and could in theory be broader than section 227(c). *See Jones*, 792 F. Supp. 3d at 900–01; *Davis*, 2025 WL 2491195, at *2.

What's missing, however, is any credible reason to think that "call" *actually does* mean something broader in section 227(b) than in section 227(c). Absent good reason to think otherwise, a statutory term is presumed to have a consistent meaning throughout a statute. *See Henson*, 582 U.S. at 85. Michael Kors doesn't say why the meaning of "call" would differ between the two provisions. Nor does *Jones*. The only possible distinction comes from *Davis*, which notes that 227(b) says it's

---

message.'").

unlawful to make "any call" to various kinds of devices using an autodialer, whereas section 227(c) refers to a prohibited "telephone call." *See* 2025 WL 2491195, at *2. But, as explained above, the word "telephone" isn't doing any work here. *See supra*. And "any" is hardly unique to section 227(b)(1)(A); section 227(c) uses similarly expansive modifiers, requiring the FCC to "prohibit *any* person from making or transmitting a telephone solicitation to the telephone number of *any* subscriber included" in the Do Not Call List. 47 U.S.C. § 227(c)(3)(F) (emphases added).

To the contrary, reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. Again, Congress would not have *excluded* text messages in section 227(c)(5) by using a term that in section 227(b) *includes* them. So "there is no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions." *Dawson v. Porch.com*, 2024 WL 4765159, at *5 (W.D. Wash. 2024).

Finally, Michael Kors says that an entirely separate provision, added to the statute in 2018, distinguishes between calls and text messages. Namely, Michael Kors cites definitions of "caller identification" found in the Consolidated Appropriations Act of 2018. Pub. L. No. 115-141, div. P, § 503(a), 132 Stat. 348, 1092–93 (2018); *see* 47 U.S.C. § 227(e)(8)(A)–(B). Those provisions prohibit false or misleading "caller identification information," defined as information about the source of "a call made using a voice service or a text message sent using a text

10

messaging service." 47 U.S.C. § 227(e)(8)(A). Michael Kors says that shows that a "call" and a "text message" are distinct.

But, if anything, section 227(e)(8) actually shows the opposite: It reinforces that texts *are* calls in the lexicon of the TCPA. It describes a "text message" as something that comes from a "caller," just like a traditional voice call does. So the more natural takeaway is that section 227(e)(8) identifies two different types of calls—voice calls and text calls—both of which originate with a "caller" and therefore require "caller identification." Unlike Michael Kors's interpretation, that reading of section 227(e)(8) accords with the meaning of "call" as that word is used elsewhere in the TCPA.

And even if section 227(e) did distinguish between a "text message" and a "call" as Michael Kors contends, that wouldn't change the best reading of section 227(c). When Congress enacted section 227(e) in 2018, Congress directed that nothing therein "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with [the TCPA]." Pub. L. No. 115-141, div. P, § 503, 105 Stat. 348, 1094. That would include the FCC rules and orders that interpreted "call" to include text messages.  Moreover, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998). Surely, that's especially true here, where the Congress that enacted original TCPA in 1991 and the Congress

that enacted section 227(e)(8) in 2018 legislated on opposite sides of a seismic shift in phone technology. The more meaningful reference point is the meaning of "call" in section 227(b), which was enacted at the same time as section 227(c), and which clearly uses "call" to refer to written messages.

### b.  Even if ambiguity remained, § 227(c) is an express delegation, and the FCC's reasoned rules merit judicial respect.

The best reading of the statute is that the word "call" includes texts. But if there's any doubt about that, the FCC's interpretation should resolve it. That's because Congress expressly delegated authority to the FCC to "fill up the details" of the Do Not Call List rules. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). As at least one other court has held post-*Loper Bright*, section 227(c) "explicitly delegates such authority." *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025). So, the FCC's longstanding reasonable interpretation of the word "call" should still carry the day. *See id*.

Sometimes "the best reading of a statute is that it delegates discretionary authority to an agency." *Loper Bright*, 603 U.S. at 395. Courts thus still afford deference to agency interpretations when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id*. at 394–95. In that case, a court's role is merely to "fix[] the boundaries" of agency

12

authority and ensure "reasoned decisionmaking" within them. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

Section 227(c) is an express delegation of that sort. Congress didn't write Do Not Call List rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as "effectiveness in protecting … privacy rights" and "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That confers discretionary authority to "fill up the details," using open-ended language that bestows "flexibility." *Loper Bright*, 603 U.S. at 395.

It therefore would honor Congress's intent to "respect [that] delegation" and accept the FCC's "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395, 413. The FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier" and "eliminate[s] any potential confusion in the industry." 38 FCC Rcd. at 12256–57 ¶¶ 26–27 & n. 59. That conclusion aligns with the FCC's determination that cell phone numbers may be listed, and that the word "call" confers protection from unwanted text messages in other TCPA contexts. *Id.* That conclusion is "reasonable and reasonably explained," and therefore warrants deference. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605

U.S. 168, 180 (2025).

Alternatively, the FCC's interpretation should—at the very least—be accorded "great weight." *Loper Bright*, 603 U.S. at 388. The FCC's longstanding and consistent interpretation of the word "call" is thus an "informed judgment" to which this Court can "properly resort for guidance." *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore*, 323 U.S. at 139–140); *see Mujahid*, 2025 WL 3140725, at *3.

## II.   Cellular Telephone Numbers are Protected under the TCPA's National Do Not Call Registry Provision and the Plaintiff alleges that her Telephone is a Residential Number.

Section 227(c) protects residential subscribers, not a hardware type. In context, "residential" distinguishes personal use from business use; "telephone subscriber" covers wired or wireless service. 47 U.S.C. § 227(c)(1); *Cacho*, 739 F. Supp. 3d at 206. The Court should conclude that an individual residential subscriber to a cellular telephone service is a "residential" subscriber protected by the statute. The statute does not require transmission by wire, or any type of technology for that matter.

Start with what the statute prohibits: unwanted "telephone solicitations." 47 U.S.C. § 227(c)(3). "Telephone solicitation" is a defined term in the TCPA. *Id.* § 227(a)(4). In essence, it means "a telephone call or message" "which is transmitted to any person" for commercial purposes. *Id.* Solicitations to cell phones fit that definition. First, to state the obvious, a cell phone is a "telephone." *See,*

14

*e.g.*, 47 U.S.C. § 227(b)(1)(A)(iii) (using the words "cellular telephone"). The word "message" suggests that Congress had no particular technology in mind: "Message" means "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*, from one person to another." *Message*, *Black's Law Dictionary* (6th ed. 1990) (emphasis added).

Next, consider who is protected: "residential telephone subscribers" or, elsewhere, just "residential subscribers." 47 U.S.C. §§ 227(c)(1), (c)(3). Unpacking that language yields the same conclusion. In context, the ordinary meaning of § 227(c)'s text here establishes that Congress authorized the FCC to protect *all* "residential telephone subscribers," including cell phone subscribers. 47 U.S.C. § 227(c)(1). For starters, a "subscriber" is anyone who gets a bill in exchange for service. *See Cacho*, 739 F. Supp. 3d at 206. So, a person can be a "telephone subscriber" to any telephone service, either wired or wireless. *Id.*; *Wilson v. Hard Eight Nutrition LLC*, No 6:25-cv-144, 2025 WL 1784815, at *5 (D. Or. June 27, 2025).

That leaves the word "residential," which Defendant's argument hinges on. But that word doesn't exclude cell phone subscribers, either. As used in the TCPA, "residential" is just the opposite of "business," not "landline" from "wireless." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). So, the word "residential" in § 227(c) distinguishes types of subscribers and refers

to the *purposes* for which a phone is used, not its technology, physical characteristics, or location. *Wilson,* 2025 WL 1784815, at *5; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5-7 (M.D. Pa. Jan. 17, 2024). And "residential subscriber" means a subscriber who uses their phone "for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206; *accord Isaacs*, 2025 WL 2268359, at *3; *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-2087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024). Many cell phone subscribers, including Plaintiff, fit that description.

And, as *Jackson* explained, 2024 WL 184449, at *5, Defendant's argument commits a fundamental grammatical error. "Grammatically, 'residential' modifies 'subscriber,' not 'telephone,' so § 227(c) turns on whether the subscriber uses the number for personal (non-business) purposes rather than the line's technology." *See Jackson*, 2024 WL 184449, at *5–7; *Cacho*, 739 F. Supp. 3d at 206–07. The TCPA's text and FCC regulations establish that meaning of the word "residential," and nothing about that meaning is contrasted with the word "cellular." Rather, it is contrasted with the word "business." Congress used the word "residential" in the TCPA's statutory findings in *this* manner, and not in the manner that Defendant proposes. For example, Congress noted that "businesses actively telemarket goods and services to *business and residential* customers." Pub. L. No. 102–243, 105 Stat. 2394, § 2 (emphasis added). The current text of the TCPA, as amended in 2005, also

16

contrasts "residential subscriber" with "business subscriber." 47 U.S.C. § 227(a)(2)(A). And FCC statutory regulations dating back to the 1990s explicitly define "residential subscriber" to mean "a subscriber … *that is not a business subscriber*." 47 C.F.R. § 64.2305(d) (emphasis added); *see* 14 F.C.C. Rcd. 15550, 15692 (1999). Defendant's reliance on *Insurance Marketing Coalition* is misplaced.

That meaning of "residential" also aligns with the "express aim" of the Do Not Call List: to protect residential subscribers' "'privacy rights.'" *Wilson*, 2025 WL 1784815, at *6 (quoting 47 U.S.C. § 227(c)(1), (2)). That shows that "Congress's interest in Section 227(c) was in the person and province that was being invaded and not simply in the technology through which the invasion was effected." *Cacho*, 739 F. Supp. 3d at 207. Those interests "do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than a landline." *Lyman*, 2024 WL 3406992, at *4.

This reading also aligns with the purpose and structure of the TCPA as a whole as protecting privacy rights for cell phone subscribers receiving text messages. In passing the statute, Congress expressly found that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (quoting Congressional findings). The statute as whole responds to those findings by providing protection from noxious telemarketing practices across a wide range of devices and telephonic communication mediums that receive

"messages." So, Congress clearly did not understand "privacy rights" to be the exclusive province of landline phone subscribers receiving voice calls.

Defendant's reliance on historical context and dictionaries do not dictate a contrary result. All that Defendant's historical sources show is the obvious fact that most residential subscribers still had landlines in 1991. But even if that's true, that doesn't mean Congress intended anything to turn on the presence or absence of a physical wire. *See Cacho*, 739 F. Supp. 3d at 205. And even history is no match for "a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). As outlined above, that examination shows that Congress authorized the FCC to protect cell phones, so there's no need to resort to legislative history. Nothing shows that Congress intended to protect only physical wires connected to a house, nor is it particularly illuminating, for "floor statements by individual legislators rank among the least illuminating forms of legislative history." *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017).

Consistent with Congress's intent, the FCC has permitted cell phone subscribers to register their numbers on the Do Not Call List since 2003. For all the reasons just explained, that decision accords with the ordinary meaning of § 227(c). And if nothing else, the statute's text shows that Congress expressly empowered the FCC to decide this question by giving the agency discretion to

18

"protect residential telephone subscribers' privacy rights" through a "rulemaking proceeding." 47 U.S.C. § 227(c)(1); *see Loper Bright*, 603 U.S. at 395. Any doubts should be resolved in favor of deference to the regulations the FCC promulgated under that authority, because the FCC's decision to protect cell phone subscribers was—at the very least—"reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 145 S.Ct. 1497, 1511 (2025).

In the 2003 order that established the Do Not Call List regulations, the FCC determined that "wireless subscribers" were eligible for protection. 18 FCC Rcd. 14014, 14037 ¶ 33 (2003). The FCC reasoned in part that the "objectives" and "intent" of the TCPA support interpreting § 227(c) to cover wireless devices, as evidenced textually by the neighboring autodialer provisions that explicitly mentioned cellular phones. *Id.* at 14037–38 ¶¶ 33–36. And in reaching that conclusion, the FCC considered and rejected the exact argument that Defendant make here: that Congress's use of the word "residential" meant to foreclose coverage for cell phones. *See id.* at 14038 ¶ 34. Drawing on its familiarity with ongoing shifts in the telecommunications industry, the FCC found that "it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones." *Id.* at 14038–39 ¶ 35. That finding recognized and correctly applied the functional definition of "residential" that the TCPA adopts, which—as discussed above—is based on a phone's private, domestic

use, not its technical properties or physical location.

Indeed, every court to address this issue after the Supreme Court's ruling in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), has reached the exact same conclusion—that cellular telephone numbers are protected under the TCPA's National Do Not Call Registry provision. *See e.g. Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625, at *7-9 (N.D. Ga. Aug. 7, 2025); *Ferrell v. Colourpop Cosmetics, LLC*, No. 2:25-cv-01324, 2025 U.S. Dist. LEXIS 140893, at *16-17 (C.D. Cal. July 22, 2025) ("In 1991, when the TCPA was enacted, Webster's Dictionary defined 'residential' as 'used as a residence or by residents.' *See Wilson v. Hard Eight Nutrition LLC*, No. 6:25-cv-00144-AA, 2025 U.S. Dist. LEXIS 122504, 2025 WL 1784815, at *5 (D. Or. June 27, 2025) (quoting Residential, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY).

The cases Defendant cites do not support a different conclusion and are unpersuasive outliers. In *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019), the court *sua sponte* expressed its own divination whether cellular telephone numbers were covered by the TCPA's DNC provisions but nevertheless awarded the plaintiff $33,000 in statutory damages. Indeed, subsequent

decisions from the Eastern District of Pennsylvania have made clear that the TCPA's Do Not Call protections apply to cell phones.[4]

Defendant also cites *Gaker v. Q3M Ins. Sols.* but omits critical context: *Gaker* was "an unresolved magistrate recommendation." *See Black v. Ideal Concepts, Inc.,* 2025 U.S. Dist. LEXIS 76417 *4 (W.D. Tex. April 21, 2025) (denying motion to dismiss and criticizing *Gaker*). Even the Magistrate Judge's opinion in *Gaker* acknowledges that other district courts in the Fourth Circuit, where that decision was, have held that wireless numbers are entitled to DNC protections. *Id. Gaker* is oft-criticized, with the Jackson court characterizing it as "ill-founded." *Jackson*, 2024 U.S. Dist. LEXIS 8811, at *12, fn. 60. And *Gaker* has been subsequently distinguished by other federal courts, including in *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at *3-4 (M.D.N.C. Aug. 12, 2024), report and recommendation adopted, No. 1:23-CV-486, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024).

In *Cunningham v. Politi*, 2019 U.S. Dist. LEXIS 102545, a serial *pro se* plaintiff failed to plead that his cellphone functioned as a residential line. *See Myrick v. Adapthealth, LLC,* No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *3 (E.D. Tex. June 26, 2023) ("Plaintiffs allegations regarding his cellular phone qualifying him

---

[4] *See e.g. Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *4 (E.D. Pa. Mar. 14, 2025) (holding the same Plaintiff had stated a claim for calls to his residential cell phone on the Do Not Call Registry).

as a residential telephone subscriber distinguish this case from the line of Cunningham cases cited by Defendants."). Additionally, *Politi* has been criticized by other courts and labeled "contrary to common sense." *See, e.g., Hirsch v. USHealth Advisors, LLC,* 337 F.R.D. 118, 131 (N.D. Tex. 2020).

Defendant's reliance on *Moore v. Triumph CSR Acquisition, LLC*, 2023 U.S. Dist. LEXIS 220876, is also misplaced. The *Moore* decision did not involve Section 227(c) or its implementing regulation, 47 C.F.R. § 64.1200(c). The court stated, "[c]ourts widely hold that a cell phone is not a 'residential telephone line' within the meaning of subsection 227(b)(1)(B)" and "any calls to a cell phone cannot violate subsection 227(b)(1)(B)." *Moore,* 2023 U.S. Dist. LEXIS 220876, at *5. However, the Court's interpretation has no bearing on the question here—whether "residential telephone subscribers" in Section 227(c) can encompass cellphone users who use their cellphones for residential purposes.

Simply put, Defendant's minority of cases are either distinguishable, or simply ill-reasoned and underdeveloped. Accordingly, the text, structure, and history of § 227(c) all confirm that "residential telephone subscribers" plainly encompasses cell-phone subscribers like Plaintiff. Congress designed this provision to safeguard residential phone users from unwanted intrusions, regardless of whether their residential line happens to be wireless or wired. Defendant's cramped reading would gut those protections for the vast majority of modern households and cannot be

reconciled with the statute's ordinary meaning, the FCC's consistent interpretation, or the weight of authority.

And the Plaintiff has made such allegations, as she alleges that she is a residential subscriber of his cellular telephone number entitling him to the protections of the Telephone Consumer Protection Act's National Do Not Call Registry provision by alleging the facts and circumstances demonstrating that the cellular telephone number exclusively for personal and household purposes. *Compare Gill v. Align Tech., Inc.*, 2022 U.S. Dist. LEXIS 87464, *8 (E.D. Wisc. May 16, 2022) ("Plaintiff's allegations that her wireless phone is a non-business, personal use phone that is registered on the do-not-call list is sufficient to allege that the phone was residential use.") *with Hicks v. Alarm.com Inc.*, No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433, at *12 (E.D. Va. Aug. 6, 2020) ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry—which appears to be undisputed—but his argument never returns to the facts of this case or the use of his phone. Perhaps easily addressed by amendment, this is another example of inadequate factual support for Plaintiff's claims.").

Specifically, Plaintiff alleges that, since March 2025, she has been the subscriber of cellular telephone number (586) 420-XXXX; that the number is used as a personal residential telephone number; that she does not have a landline; and that she does not use the number for business or commercial purposes. (ECF No. 1

23

¶¶ 8–11). Plaintiff further alleges she registered her telephone number with the National Do-Not-Call Registry on March 27, 2025. (ECF No. 1 ¶ 12). Those allegations are more than sufficient at the pleading stage to allege residential use for purposes of the Do-Not-Call provisions. (ECF No. 1 ¶¶ 8–12).[5]

These rulings align with the FCC's longstanding interpretation that wireless numbers listed on the National Do Not Call Registry are entitled to the same protections as landlines. See *In re Rules & Regulations Implementing the TCPA*, 18 F.C.C. Rcd. 14014, 14039 (2003). This is why federal courts consistently deny motions to dismiss in analogous TCPA cases where plaintiffs allege use of a number for personal purposes and its presence on the DNC Registry. *See Robertson v. Mortgage Research Center, LLC*, No. 2:24-cv-04106, 2024 WL 5046604, at *1 (W.D. Mo. Dec. 9, 2024); *Gonzalez v. Burger L., LLC*, No. 4:23-CV-1094, 2024 WL 1014058, at *3 (E.D. Mo. Mar. 8, 2024); *Thompson v. Vintage Stock, Inc.*, No. 4:23-cv-00042, 2024 WL 492052, at *9 (E.D. Mo. Feb. 8, 2024); *Howell v. Smartmatch*

---

[5] Relatedly, the Defendant's attack (without a legal argument) on the fact that Ms. Soboleski has filed more than one TCPA lawsuit can be discarded. Given the transient nature of cellular telephone numbers, in 2018, the FCC established the Reassigned Number Database, which went online in 2021, to insulate companies like Defendant from liability for violating the TCPA by allowing them to determine whether a telephone number they intend to contact has been reassigned to someone who has not previously consented to be contacted by them. *See In re Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 FCC Rcd 12024 (F.C.C. Dec. 13, 2018). However, Defendant (and each of the other companies Plaintiff has sued under the TCPA) failed to use the Reassigned Number Database, resulting in its TCPA violative text messages to Plaintiff.

*Ins. Agency, LLC*, No. 4:23-cv-00040, 2023 WL 6478881, at *3 (W.D. Mo. Sept. 29, 2023).

At this stage, nothing more is required to plausibly allege that her cell phone is a residential number protected by the TCPA.

### Conclusion

Michael Kors's motion asks this Court to carve text messages and cell-phone users out of the TCPA's do-not-call protections. The statute says otherwise. A text message sent to a telephone number is a "call," and § 227(c) protects residential subscribers—i.e., people who use a number for personal, non-business purposes—regardless of whether the device is a landline or a cell phone.

Plaintiff alleges multiple unsolicited marketing texts to her DNC-registered personal number in violation of the FCC's rules. Those allegations state a claim under § 227(c). The motion to dismiss should be denied.

Dated: December 26, 2025          PLAINTIFF, on behalf of herself
                                  and others similarly situated,


                                  */s/ Anthony I. Paronich*
                                  Anthony I. Paronich
                                  Paronich Law, P.C.
                                  350 Lincoln Street, Suite 2400

25

Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com