# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| VICTORIA SOBOLESKI, on behalf of herself and others similarly situated,<br><br>       Plaintiff,<br>  v.<br><br>MICHAEL KORS (USA), INC.,<br><br>       Defendant. | Case No. 2:25-cv-11838-DPH-CI<br>District Judge Denise Page Hood<br>Magistrate Judge Curtis Ivy, Jr.<br><br>Electronically Submitted |

**DEFENDANT MICHAEL KORS (USA), INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS <u>PLAINTIFF'S CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................2

I.     Plaintiff's Opposition Fails to Establish That Her TCPA Claim Is Covered by Section 227(c) ..........................................................................................2

     A.     Section 227(c) Does Not Apply to Cellular Telephone Subscribers ..............................................................................................2

     B.     Text Messages Are Not Telephone Calls.............................................3

II.     Plaintiff's Attempt to Invoke the FCC Ignores Supreme Court Precedent......................................................................................................6

III.     Plaintiff's Allegations Are Insufficient to State a Claim ..............................7

CONCLUSION ...................................................................................................................7

# INDEX OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Page(s)**

**Cases**

*Davis v. CVS Pharmacy, Inc.*,
 797 F. Supp. 3d 1270 (N.D. Fla. 2025) ................................................................3

*Dilanyan v. Hugo Boss Fashions, Inc.*,
 No. 2:25-cv-05093, 2025 WL 3549868 (C.D. Cal. Dec. 3, 2025) ........................4

*Facebook, Inc. v. Duguid*,
 592 U.S. 395 (2021) ..............................................................................................5

*Hamdan v. Rumsfeld*,
 548 U.S. 557 (2006) ..............................................................................................3

*Ins. Mktg. Coal. Ltd. v. FCC*,
 127 F.4th 303 (11th Cir. 2025) .............................................................................7

*Jones v. Blackstone Med. Servs., LLC*,
 792 F. Supp. 3d 894 (C.D. Ill. 2025) ....................................................................4

*Loper Bright Enters. v. Raimondo*
 603 U.S. 369 (2024) ..........................................................................................6, 7

*Marbury v. Madison*,
 5 U.S. 137 (1803) ..................................................................................................6

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
 606 U.S. 146 (2025) ..............................................................................................6

*Moore v. Triumph CSR Acquisition, LLC*,
 No. 1:23-cv-04659, 2023 WL 8601528 (N.D. Ill. Dec. 12, 2023) ........................2

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
 551 U.S. 224 (2007) ..............................................................................................3

*Pulsifer v. United States*,
 601 U.S. 124 (2024) ..............................................................................................5

*Ysleta Del Sur Pueblo v. Texas*,
 596 U.S. 685 (2022) ..............................................................................................5

**Statutes and Other Authority**

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................... 6

47 U.S.C. § 227(e)(8)(A) ......................................................................................... 5

*Paging Network, Inc.*, Annual Report (1991) ........................................................ 6

*In re Rules & Reguls. Implementing the TCPA*,
    18 F.C.C. Rcd. 14014 (2003) ............................................................................ 7

Defendant Michael Kors (USA), Inc. ("MK") respectfully submits this Reply Memorandum of Law in Further Support of its Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 12 (the "Motion").[1]

## **INTRODUCTION**

Tasked with defending her boilerplate allegations that contort the TCPA well beyond the scope envisioned by Congress in 1991, Plaintiff's Opposition, ECF No. 18 (the "Opposition"), asks this Court to ignore the TCPA's plain text and substitute Congress's chosen language for her own.  Plaintiff's task under the TCPA is simple: she must allege that MK made "telephone calls" to a "residential telephone subscriber."  As MK explained in the Motion, however, Plaintiff's claim is fatally deficient in both regards: cellular telephones are not "residential telephones" under the TCPA, and text messages reasonably cannot reasonably be considered "calls."

Rather than rebutting the Motion's analysis of the TCPA as it was enacted and understood in 1991, Plaintiff instead relies on out-of-circuit authority, self-contradictory interpretations of legislative intent, and suggestions that the Court blindly defer to the FCC's nonbinding interpretations of the TCPA.  But to state a claim, Plaintiff must tailor her claims to the TCPA, not tailor the TCPA to her claims.  In sum, Plaintiff's interpretation of the TCPA is mistaken, and her Complaint lacks merit as a matter of law.  It should therefore be dismissed.

---

[1]   All terms not otherwise defined herein have the same definition as used in the Motion.

1

# ARGUMENT

## I. Plaintiff's Opposition Fails to Establish That Her TCPA Claim Is Covered by Section 227(c)

### A. Section 227(c) Does Not Apply to Cellular Telephone Subscribers

Plaintiff's argument that she is a "residential telephone subscriber" despite admittedly only subscribing to the 586 Number—which is not a residential telephone—misses the forest for the trees. Instead of addressing the meaning of the term "residential telephone subscriber" as it was enacted and understood by Congress, Plaintiff conducts a piecemeal analysis and concludes that "telephone subscribers" includes cell phones and that "residential" only serves to distinguish personal and business use. (PageID.141–144.) But that is not how the term was understood by Congress in 1991, and whether a residential line relies on a "physical wire," fiber optics, or some other technology, one fact remains: "[a] cellular phone and a residential phone are not the same thing." *Moore v. Triumph CSR Acquisition, LLC*, No. 1:23-cv-04659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023).

As discussed in the Motion, the term "residential" was commonly understood in 1991 to mean "adapted or restricted to or occupied by residences" or "of, relating to, or connected with residence or residences." (PageID.62–63, 77.) In fact, Congress itself used the term in Section 227(b) in this fashion, contrasting restrictions governing "residential telephones" to those governing "cellular telephones." (PageID.63–64.) Plaintiff offers no historic explanation for her

2

conflicting interpretation of the term, and "identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007). "That maxim is doubly appropriate here," since Sections 227(b) and 227(c) were "inserted . . . at the same time." *Id.*

If a cell phone can be a residential telephone as Plaintiff contends, Congress's decision to enumerate distinctions between the two terms would be rendered functionally meaningless. (PageID.66 (collecting cases).) Congress repeatedly used both "residential" and "cellular" telephones in Section 227(b), yet it chose not to include cellular telephone subscribers in Section 227(c). Plaintiff nowhere addresses Congress's decision to do so, nor does she address the "negative inference . . . drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). Simply put, Congress knew what a cell phone was in 1991 and could have included them in Section 227(c) if it intended that they be covered by the section. It did not.

### B. Text Messages Are Not Telephone Calls

Again ignoring the plain text of the TCPA, Plaintiff insists that the term "call" in Section 227(c)(5) broadly includes *any* oral or written communication by telephone. But "[n]o ordinary user of the English language would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner." *Davis v. CVS Pharmacy,*

3

*Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025); *see also Jones v. Blackstone Med. Servs., LLC,* 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) ("'[T]elephone call' means something entirely different from 'text message.' Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages.").

"[T]elephone calls and text messages are two distinct forms of communication—one involves speaking with or attempting to speak with someone in real time, and the other involves a one-way, often written communication." *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025). Thus, expanding Section 227(c) to text messages is not a "new application" of existing language; rather, and borrowing Plaintiff's analogy, it would be akin to a rule saying "no vehicles in the park" being applied to a bicycle just as it would a car. (*Cf.* PageID.135.) So, even while *Dilanyan* was constrained by *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the court found the textual analysis (based on the cases MK cited in its Motion) so persuasive that it certified the issue for interlocutory appeal. 2025 WL 3549868, at *3.

And for good reason, as Plaintiff has no textual support for her interpretation of the term call. As Plaintiff concedes, the TCPA defines a telephone solicitation to "mean[] 'a telephone call or message.'" (PageID.141 (quoting 47 U.S.C. § 227(a)(4)).) A telephone message, according to Plaintiff, encompasses "any notice, word, or communication, no matter the mode and no matter how sent, from one

4

person to another." (PageID.142.) In other words, Plaintiff's proposed definition of call admittedly "assumes the same meaning as another statutory term." *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022). While Congress wished to regulate telemarketing, that "does not mean that it adopted a broad" definition of call that Plaintiff proffers here. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 408 (2021).

Plaintiff's expansive interpretation of the term call is further undermined by Congress's 2018 amendments to the TCPA, which expressly provided that a text message does not include "real-time, two-way, voice or video communications." (PageID.70.) Plaintiff ignores this distinction, focusing on "caller identification" and insinuating that the section includes "voice calls and text calls" by "describ[ing] a 'text message' as something that comes from a 'caller.'" (PageID.138.) Not so. To the contrary, the section separately enumerates "a call made using a voice service" and "a text message sent using a text messaging service," confirming that those nouns are not coextensive. 47 U.S.C. § 227(e)(8)(A); *see also Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings.").

And while Plaintiff contends that MK "has no good answer" for Congress's decision to restrict calls to "paging service[s]" in Section 227(b), (PageID.131, 136–137), her argument fundamentally misunderstands how pagers worked in 1991. A paging service did not operate by typing in a message and transmitting the signal

5

directly to the recipient like a modern SMS message. Rather, customers had to enroll in a third-party paging service, where they "receive[d] a distinct telephone number." *See, e.g., Paging Network, Inc.*, Annual Report, at 7 (1991). "When a phone call for [that] subscriber [was] received," the paging service recorded the message, "transmit[ted] a radio signal to the subscriber's pocket-sized radio receiver," and displayed the message on the pager. *Id.* at 7–8. In other words, a call "to a paging service" required an actual call be dialed, which is why Congress restricted calls that could be made to those numbers using an ATDS. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

## II.     Plaintiff's Attempt to Invoke the FCC Ignores Supreme Court Precedent

Next, Plaintiff invokes the FCC's interpretation of the TCPA and argues that, should this Court doubt her textual or structural analyses, the FCC's interpretation of the TCPA should "carry the day." (PageID.139.) But while the Court may consider the FCC's position, it "is not bound by the FCC's interpretation of the TCPA." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025). Put differently, it is the role of this Court—not the FCC—to "say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

Plaintiff's argument that Congress expressly delegated authority to define the TCPA's scope by "fill[ing] up the details" of the statute lacks merit. (PageID.139–140.) Unlike the statutes in *Loper Bright Enterprises v. Raimondo*, which include language saying that specific terms will be "defined by regulations," the TCPA

6

contains no placeholder language or items to be filled in. *Cf.* 603 U.S. 369, 395 n.5 (2024).[2] And, in any event, Congress's "generic grant of rulemaking authority to fill gaps" in the TCPA "does not allow the FCC to alter the specific choices Congress made." *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025) (quoting *Nat'l Ass'n of Broads. v. FCC*, 39 F.4th 817, 820 (D.C. Cir. 2022)).

### III.   Plaintiff's Allegations Are Insufficient to State a Claim

And notwithstanding Plaintiff's reading of the TCPA, Plaintiff's claims still fail because she does not allege *facts* to support her argument. Instead of distinguishing MK's authorities from the Motion that found similarly conclusory allegations to be insufficient, Plaintiff points to her boilerplate allegations and concludes that they "are more than sufficient at the pleading stage." (PageID.151.) But Plaintiff is required to allege facts showing that she used the 586 Number for "residential purposes." (PageID.72.) Here, all Plaintiff offers in her Complaint are residential conclusions. These are not enough to state a claim.

### CONCLUSION

For the reasons set forth above and in the Motion, Defendant Michael Kors (USA), Inc. respectfully requests that the Complaint be dismissed with prejudice.

---

[2] Moreover, the FCC's 2003 Order is unpersuasive because it did not properly seek notice and comment for whether Section 227(c) covers cell phones or text messages. *See In re Rules & Reguls. Implementing the TCPA*, 18 F.C.C. Rcd. 14014, 14026 (2003) (enumerating the specific issues on which comment was sought, including "the use of automatic telephone dialing systems" and "the effectiveness of company-specific do-not-call lists").

7

| | |
|---|---|
| Dated: January 20, 2026 | Respectfully submitted, |
| | By: */s/ James B. Saylor* |

                                            James B. Saylor
Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel.: (212) 808-7800
jsaylor@kelleydrye.com

Benjamin J. Aloia
Ralph Colasuonno
Aloia Law, P.C.
48 S. Mai Street, Ste. 3
Mount Clemens, MI 48043
Tel.: (586) 783-3300
aloia@aloia.law
colasuonno@aloia.law

*Attorneys for Defendant*

8